## FURBUSH *v.* MARYLAND CASUALTY CO.

1. APPEAL—REMARKS OF COURT—EXCEPTIONS.
   A party who took no exception to a remark made by the trial court on overruling an objection to testimony interposed by the opposite party could not complain of the remark on appeal.

2. ACCIDENT INSURANCE—SUICIDE—QUESTION FOR JURY.
   Evidence in an action on an accident policy examined, and *held* to raise a question for the jury as to whether insured came to his death through homicide or suicide.

3. SAME—PRESUMPTIONS—INSTRUCTIONS.
    In an action on an accident policy, in which it was apparent
        that insured either committed suicide or was murdered,
        defendant could not complain of an instruction that the pre-
        sumption of the law was against suicide, where its own re-
        quests to charge were based upon that theory.

Error to Alpena; Emerick, J.   Submitted February 24,
1903.   (Docket No. 152.)   Decided June 23, 1903.

*Assumpsit* by Louesa C. Furbush against the Maryland
Casualty Company on a policy of insurance.   From a
judgment for plaintiff, defendant brings error.   Affirmed.

*Charles R. Henry*, for appellant.

*R. J. Kelley*, for appellee.

MOORE, J.   February 3, 1900, George M. Furbush
obtained from the defendant company an accident insur-
ance policy, running for one year, for the sum of $5,000,
in favor of his wife, the plaintiff.   In the forenoon of the
1st of December following, Mr. Furbush was found by the
side of the public highway, lying upon his back, dead.
The defendant declined to pay the amount of the insur-
ance, claiming Mr. Furbush had committed suicide.   The
case was tried before a jury, who returned a verdict for
the full amount of the insurance.   The case is brought
here by writ of error.

This is the second time the case has been in this court.
It is reported in 131 Mich. 234 (91 N. W. 135).   A refer-
ence to the opinion in that case will aid in understanding
the questions presented here.   Upon the first trial the
circuit judge allowed witnesses, sworn on the part of the
plaintiff, to express opinions in relation to certain phases
of the testimony.   We thought the witnesses should state
facts instead of conclusions, leaving to the jury the duty
of drawing the conclusions from the facts.   Upon the
first trial the defendant sought to show the insured was in
straitened pecuniary circumstances, and was of intemper-

ate habits.   This testimony was, we thought, improperly excluded, and for these reasons the judgment was set aside and a new trial ordered.   Upon the second trial the objectionable testimony offered by the plaintiff on the first trial was not received, and the defendant was allowed to put in such proof as it offered bearing upon the habits and financial condition of Mr. Furbush.

The first question calling for discussion is, Did the trial judge err in some comments he made in passing upon an objection made by the attorney for the plaintiff to a question put to a witness by the attorney for the defendant? The record shows the court overruled the objection, and the witness answered the question.   The attorney for the plaintiff excepted to the ruling.   The attorney for the defendant made no suggestion to the judge that he was dissatisfied with the ruling or the remarks of the judge, and took no exceptions to what he said.   Under these circumstances, the question is not open for review in this court.

Error is assigned to the closing argument made by the attorney for the plaintiff.   It would not be profitable to set out this argument here.   We have examined it with care, in connection with the defense which was interposed and the testimony offered to support the defense.   We are all agreed we are not able to say the argument, if objectionable, was sufficiently so to justify us in reversing the case for that reason.

It is insisted upon the part of the defendant a verdict should have been directed in its favor.   It is claimed the insured was a hard drinker, that he was financially embarrassed, that he was despondent, and that all the evidence pointed to suicide as the only explanation of his death. ·

On the part of the plaintiff it is claimed the evidence shows the following.   We quote from the brief of counsel:

"The plaintiff had shown that the insured, her husband, was in the prime of life, 40 years of age, in good health, and always had been; that he was active, energetic, and attentive to his business; that at no time prior to his

death had he manifested by act or word any unusual condition of mind or body; that, on the day prior to his death, he was engaged in his usual business, dictating and writing many letters to his customers; that he informed his brother-in-law, on the evening before his death, of his intended trip to Washburn for the purpose of transacting business with the Bigelow Lumber Company; that he returned home that evening about 7 o'clock, told his wife of his intended trip the next morning, and that he would return before noon; that he partook of an early breakfast and left his home on the morning of his death, bidding his wife good-by in his usual and accustomed manner; that he went to a livery stable, secured a horse and cutter, and started for Washburn between 6 and 7 o'clock; that on his way out of the city of Ashland he met a friend, and invited him to take a ride with him to Washburn, saying that he would return before noon. He is next found at Washburn, some 12 or 14 miles from Ashland, transacting business with the Bigelow Lumber Company, and, as testified by Mr. Hartshorn, he was in his usual good spirits, and nothing unusual was observed in his actions or conversation. After concluding his business with the Bigelow Lumber Company, he leaves their office between 9 and 10 o'clock in the morning on his return, and a few hours later his body is found about six miles from Washburn, at the roadside, on a bridge over a depression or gully, with a gunshot wound in his head which caused his death. The bullet entered above and behind the right ear; the body lay flat on its back, with his buffalo overcoat, coat, vest, shirts, and underclothes all unbuttoned and thrown open; his right hand was stretched out on the snow; several witnesses who first saw the body did not discover any revolver, but subsequently a revolver was found in the snow near his left elbow; there had been one shot fired out of it; there were two footprints near the head, and no other tracks or impressions in the snow about the body; the body lay straight out, and the coats were drawn down smoothly under it; there was a glove on the right hand, and the one on the left hand partly pulled off; a watch, a five-dollar bill, and some change was found on the body. The horse and cutter which deceased had been driving was caught at Nash, about two miles from where the body was found; a large pocket-book which deceased usually carried in his inside breast pocket, and used for bills and money when he had a con-

siderable amount, was found in the cutter, between the dash-board and foot-rest, open, and contents gone. There were no indications in the snow where the body lay of any struggle, as it had hardly made an impression, although the snow was quite soft; the revolver found near the body had never been seen in the possession of the deceased; the place where the body was found was several miles from any habitation; there was no eyewitness or direct evidence as to how the fatal shot was fired."

And counsel claims the death is not accounted for upon the theory of suicide.

The same question was presented to us by the former record. See 131 Mich. 234 (91 N. W. 135). We were of the opinion then, and are now, that the case was one for the jury.

The remaining question calling for discussion relates to the charge of the court. We quote enough from it to present the question :

"The plaintiff has the burden of proving, in order to entitle her to a verdict at your hands, that this death was occasioned through injuries which were external, violent, and from accidental means. And when I say that the plaintiff has the burden of proving that fact, she has that burden under the rule established in all civil actions, which is simply that she maintain that issue by a fair preponderance or weight of the evidence. In a civil case —and this is a civil case—the plaintiff is obliged to sustain the contention upon her part, and the issues upon the facts which she is required to prove, by the fair weight or preponderance of the evidence, which means such weight of the proof as overbalances and prevails against everything that is brought against it; such a fair weight and preponderance of the evidence as overbears everything that may be opposed to it, and which satisfies your minds fairly of the truth of the proposed issue."

"I charge you that if the death of George M. Furbush upon the 1st day of December, 1900, was caused by a bullet fired from a revolver in the hands of a third person, and fired intentionally by that third person, and that this shooting was not brought about by any act or doing of the deceased, and for which he was in no way responsible, it would be caused by means which are violent, external,

and accidental, and within the meaning of this policy, and, I will add, within the meaning of this question No. 1."

"Now, I stated a few moments ago that the plaintiff had the burden of proving before you that this was an accidental death within the meaning of this policy, and I say here to you that she still has the burden under this policy of proving that this was not a suicide; but I charge you, gentlemen of the jury, in that connection, that the law presumes that this was not suicide, from the mere fact alone of the death or finding of this body in the road. From that fact alone, with the bullet wound in the head, the law presumes that it was not a case of suicide. That presumption supplies the burden of proof which the plaintiff is required to make upon that point; and if that is all there was of the case—if that is all there was of the case, the mere fact of the dead body and the bullet wound and death—the presumption of law would be that it was something else than suicide.

"Now, this is a presumption, however, that may be overcome by evidence; it may be rebutted. It stands as a controlling factor of the case upon that point, however, until it is overcome. But if you should believe from the evidence in the case that Mr. Furbush came to his death by his own hand,—if you should be satisfied, by the fair weight and preponderance of the evidence in this case, that George M. Furbush took his own life,—then this presumption which the law makes against suicide would be overcome, and the plaintiff would not be entitled to recover."

"Now, gentlemen, in considering the issue upon that point, you have recourse, and you are remitted to, and you are to consider, all the evidence in the case, and such circumstances as counsel upon each side have been able to present to you, and which have been put here in evidence. Consider the position of the body and the clothing, and the condition of the body and the clothing, and the wound itelf, and all the facts and circumstances which are known and which have been proven here, and the surroundings; his mission and business upon the day in question; his business affairs; his social and domestic affairs, and his habits, and health or want of health; everything which has been allowed in the evidence here in this case you are to consider as bearing upon that issue,—that is to say, upon the issue as to whether he killed himself; and the presumption of law is that it was not a case of suicide,—

that he died from some other reason; and, unless you are able to say that, from the fair weight and preponderance of the evidence in the case, you believe he took his own life, then the plaintiff would be entitled to recover."

Counsel says that:

"The only reason why the courts have said that, if a man is found dead, the presumption is that he did not kill himself, is because ordinarily men do not kill themselves. The same law that created the presumption against suicide for the very same reason makes the presumption to exist against homicide, and very rightfully, too. It is no more contrary to the laws of humanity and of the common experience of men for one to kill himself, than it is for another to take his life. Suicide is quite as common as murder. At least, suicide is not presumed for the very same reason that murder is not presumed."

It is argued that as the defendant claims it is a case of suicide, while plaintiff claims it is a case of murder, it cannot be said the presumption of murder arises in this case from the fact that Mr. Furbush was found dead from a bullet wound. This is a view of the law not presented in the court below. The defendant preferred the following requests:

"In this case the burden is on the plaintiff, Louesa C. Furbush, of proving that George M. Furbush came to his death by reason of external, violent, and accidental means, and this must be established, to entitle the plaintiff to recover, by a fair preponderance of all of the evidence."

"That, while the presumption is that the deceased did not commit suicide, yet this is a presumption only, which can be overcome by evidence."

"If you find that the preponderance of evidence is that the deceased, George M. Furbush, came to his death by his own act, then you must find in favor of the defendant."

We have already quoted sufficiently from the charge of the court to show that the substance of each of these requests was given. It was the claim of plaintiff that the death of Mr. Furbush was accidental, within the meaning of the terms of the policy. It was claimed by way of

defense that Mr. Furbush committed suicide. The trial court gave the substance of the requests of the defendant as to the burden of proof, which presented its theory of that branch of the case. The defendant has no occasion to complain of that portion of the charge. See *Travelers' Ins. Co.* 'v. *Nicklas*, 88 Md. 470 (41 Atl. 906), and the cases therein cited; *Burnham* v. *Casualty Co.*, 117 Mich. 142 (75 N. W. 445).

The other assignments of error have been examined. We do not deem it necessary to discuss them. The case was tried with care, and we do not discover in it any reversible error.

Judgment is affirmed.

The other Justices concurred.