POWERS *v.* LOYAL PROTECTIVE INSURANCE CO.

1. Appeal and Error—Defenses Not Pleaded—Insurance.
    Defense that assured voluntarily exposed himself to unnecessary danger, being a breach of condition of accident insurance policy, not having been affirmatively pleaded by insurer who had burden of proving same, is not considered on appeal.

2. Insurance—Evidence—Coroner's Certificate—Admissibility.
    Coroner's certificate of the cause of death of assured was properly excluded as evidence of intent of assured in action on accident insurance policy.

3. Same—Suicide—Presumption.
    Presumption of law is against suicide.

4. Same—Accident—Suicide—Evidence.
    Evidence in action on accident insurance policy *held,* to present question for jury as to whether deceased who came to his death by asphyxiation by gas died through suicide or by accident.

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted January 9, 1934. (Docket No. 86, Calendar No. 37,495.) Decided March 6, 1934.

Assumpsit by Lloyd Powers and others against Loyal Protective Insurance Company, a Massachusetts corporation, on an accident insurance policy. Verdict and judgment for plaintiffs. Defendant appeals. Affirmed.

*Hamilton, Cleary & Storkman,* for plaintiffs.

*Mason, Alexander, McCaslin & Cholette (Dwight W. Fistler,* of counsel), for defendant.

Potter, J.  Plaintiffs, beneficiaries under a policy of insurance providing for indemnity for accidental

loss of the life of assured and that no liability thereon should accrue by reason of death of the assured from suicide, brought suit on the policy after death of the assured. There was judgment for plaintiffs and defendant appeals, claiming there is no evidence of accidental death; if deceased's death was accidental it was due to voluntary exposure to unnecessary danger, and the coroner's certificate of suicide was admissible. Defendant did not plead as an affirmative defense that assured voluntarily exposed himself to unnecessary danger. One of the conditions of the policy sued upon was that the insurer should not be liable for the death of the assured caused from voluntary exposure to unnecessary danger. If death was claimed by defendant to have been caused by a breach of such condition by assured, such defense should have been affirmatively pleaded, Court Rule 23, § 4 (1931), and the burden of establishing such defense was on defendant. It was not so pleaded. This obviates the necessity of considering it.

It is conceded the premiums on the policy had been fully paid, all conditions of the policy complied with and proof of loss duly made. The court was not in error in excluding the coroner's certificate of the cause of the death. The intent of the assured, if he had such intent, was a crucial question in controversy for the determination of the jury under all the facts. The coroner might have been examined and cross-examined. His *ex parte* conclusions do not rise to the dignity of evidence of the intent of assured. They are mere *ex parte* statements, not admissible in evidence. *Wasey* v. *Travelers' Ins. Co.,* 126 Mich. 119; *Gilchrist* v. *Mystic Workers of the World,* 188 Mich. 466 (Ann. Cas. 1918C, 757). A coroner's certificate showing death resulted from suicide was held *prima facie* evidence in *Bromberg*

v. *North American Life Ins. Co.,* 192 Mich. 143. This holding was based upon 2 Comp. Laws 1915, § 5607, which has since been repealed. 2 Comp. Laws 1929, § 6594.

The important questions were whether assured committed suicide, and whether there was any evidence of accidental death. At the conclusion of the trial, the case was submitted to the jury in a general charge about which no complaint is made, and the jury assessed plaintiffs' damages at $1,562.50, and answered certain special questions propounded to the jury by defendant as follows:

Special question No. 1.
"After due consideration of the evidence, do you find that the deceased knowingly and intentionally turned on the gas for the purpose of ending his own life?"
Each member of the jury answered "No."
Special question No. 2.
"After due consideration of the evidence, do you find that the deceased did not turn on the gas for the purpose of ending his own life?"
Each member of the jury answered "Yes."
Special question No. 3.
"After due consideration of the evidence do you find that the deceased with gas outlet turned on, removed the hose or tube from the stove and inhaled the gas which came from it?"
Each member of the jury answered "No."

The assured came to his death by asphyxiation by gas. Such gas was either inhaled intentionally or unintentionally. There is no question but that if the breathing of the gas was not intentional and caused assured's death, such death was accidental within the terms of the policy. The question of whether the assured committed suicide or not was, under the circumstances, a question of fact. The love of life

is said to be instinctive. Self-preservation is the first law of nature. Suicide is unnatural, the presumption of law is against it. *Wishcaless* v. *Hammond, Standish & Co.*, 201 Mich. 192; *Bromberg* v. *North American Life Ins. Co., supra; Furbush* v. *Maryland Casualty Co.*, 133 Mich. 479. This presumption against suicide is strengthened in this case by proof of the habits, character and financial condition of the deceased who was about 65 years of age, single, who lived alone, in a house owned by him, against which there was no incumbrance, he having been a man of good habits, good reputation, not addicted to the use of intoxicating liquors, with a steady job and no debts. He was highly regarded as honest and reliable; was sociable, cheerful and religious; was employed as a janitor in churches; was chaplain of the Odd Fellows Lodge and regarded as normal. There was ample food in the home where he was found dead; $25 in money; some uncashed checks, and he had other funds amounting to about $890. No note was left indicating he contemplated suicide. His eyesight was poor, he wore heavy glasses and was found dead in the kitchen of his house with the gas turned on and the house filled with gas.

Assured, when he got his meals at home, usually cooked on a gas plate which sat on the kitchen stove and was supplied with gas through a flexible hose. The hose that had been used was old and the assured had spoken to Theo. Powers about changing it and was told to get a new hose and Powers would change it the next time he came. Assured had provided a new hose of the same length and size of the old one which was found in the house on a chair or on the floor in the kitchen. There was a hole in the old hose, the new hose was of the same length and dimen-

sions as the old one. It was attached to the gas supply but not to the gas stove. A flash-light turned on, grown somewhat dim, was found on the floor. Assured had slept in his bed and the kitchen table was set. He had arranged, the night before his death, to have his garden planted. Access was gained to the house through the cellar. A trap door covered the cellar-way leading from the kitchen to the cellar. The body of the assured was on or across this trap door and was moved when entrance was made to the house. The question of where the un-attached end of the hose was when assured was found, was under the circumstances a question of fact.

Defendant claims that under the undisputed facts the assured came to his death by reason of suicide. Plaintiffs claim that under the facts the question of whether deceased came to his death by accident or by suicide was one for the jury. They contend that assured had bought the new gas hose found with one end attached to the gas line coming through the kitchen floor; that the old hose leaked gas; that assured had trusted the old hose too long; that as-sured had slept in his bed the night previous to the finding of his body; that when found he was attired in a union suit on the kitchen floor; that the flash-light was only about a foot from his right hand which indicated assured might have fallen; that assured was in the habit of using a flash-light; that most of the witnesses who testify to the precise loca-tion of the body and of the hose did not see the body or the hose until after access was gained to the house through the trap door and the body and the hose were moved. Plaintiffs contend the proofs are con-sistent with the fact the assured awakened in the night, detected the odor of gas, attempted to make

the necessary repairs in the gas line; that he either didn't know how to make the repairs or because of poor eyesight and the presence of gas, became confused; that it did not occur to him to turn off the gas at the gas line, he having been used to turning the gas off at the gas plate; that this hypothesis is sustained by the fact the assured had procured the new hose, had attached the new hose to the gas line; that just what happened immediately prior to the asphyxiation of the assured no one can positively say from the testimony and therefore the presumption against suicide is a pertinent factor in the case which was properly submitted to the jury. That all of the facts and circumstances surrounding the death were properly submitted to the jury and the jury was warranted in finding the verdict which it did find. Plaintiffs claim the facts are inconsistent with suicide; that the assured did not need to get a new hose to commit suicide; that assured did not need to set the breakfast table if he contemplated immediate death, nor to stock his house with groceries, nor would he, if he planned death, have left checks uncashed, or money in the house, nor would he have planned the night before to have a garden; that all of the facts and circumstances warrant the conclusion arrived at by the jury. From the whole record we cannot say that the verdict was against the weight of the evidence, but on the contrary think there was evidence of accidental death sufficient to carry the case to the jury whose verdict is conclusive.

Judgment affirmed, with costs.

NELSON SHARPE, C. J., and NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.