SHIOVITZ *v.* NEW YORK LIFE INS. CO.

1. INSURANCE—INSURER'S RIGHT TO AUTOPSY.

   Under life insurance policy providing that in case of death insurer would have the right and opportunity to examine the body and make an autopsy, unless prohibited by law, demand on beneficiary, reasonably and properly made, would be binding.

2. APPEAL AND ERROR—DIRECTED VERDICT—RESERVATION.

   When both parties, without reservation, move for directed verdict and one is directed, review is as though trial were had without a jury.

3. INSURANCE—SUICIDE—BURDEN OF PROOF.

   Upon disappearance of presumption of law against suicide through the presentation of evidence to rebut it, the ultimate burden of proving suicide by preponderance of the evidence rests upon insurer claiming it, in action by beneficiary under life insurance policy relieving insurer of liability thereunder if death is due to suicide within two years from date of policy by returning premiums paid thereon.

4. SAME—BURDEN OF PROOF—EVIDENCE.

   In action by beneficiary under life insurance policy for face amount of policy, evidence that insured committed suicide *held*, insufficient to sustain insurer's burden of proof, when rules of evidence are applied to testimony introduced, even though Supreme Court may not be convinced it was not a case of suicide.

5. EVIDENCE—INSURANCE—CAUSE OF DEATH—ESTOPPEL.

   Verified proof of cause of death of one insured under life insurance policy, furnished by plaintiff beneficiary, *held*, competent evidence in her action against insurer but not conclusive so that it could not be varied or contradicted by a showing that insured died from some other cause.

6. SAME—CORONER'S REPORT—ADMISSIONS.

   Certified copy of report of proceedings before coroner, relative to death of insured and which showed death to be due to suicide,

which was transmitted by plaintiff's attorney to defendant together with a specific denial of its correctness as to cause of death and statement it was based on hearsay *held*, not an admission of its correctness.

7. SAME — CORONER'S CERTIFICATE — HEARSAY — RECORD MADE IN REGULAR COURSE OF BUSINESS—AUTOPSY.

Coroner's certificate that death was due to suicide from cyanide poisoning *held*, not admissible in beneficiary's action for face amount of policy to prove cause of death, where no autopsy was had and entire information contained therein was pure hearsay and without evidentiary force notwithstanding it was a record made in the regular course of business; statute that coroner's certificate was *prima facie* proof of death having been repealed (3 Comp. Laws 1929, § 14207, as amended by Act No. 15, Pub. Acts 1935; 2 Comp. Laws 1915, § 5607, repealed by Act No. 343, Pub. Acts 1925 [2 Comp. Laws 1929, § 6594]).

8. SAME—INSURANCE—SUICIDE—ADMISSIONS.

Fact that beneficiary brought suit for face value of policy which contained clause providing for double indemnity in case of accidental death *held*, not an admission that death was not accidental where insurer claimed death was due to suicide from cyanide poisoning.

9. SAME—SUICIDE—PRESUMPTIONS.

Suicide is so rare that the presumption is against self-destruction.

Appeal from Wayne; Murphy (George), J., presiding. Submitted June 16, 1937. (Docket No. 132, Calendar No. 39,612.) Decided October 4, 1937. Rehearing denied November 10, 1937.

Action by Ester Shiovitz against New York Life Insurance Company, a foreign corporation, for sums due on a life insurance policy. After disagreement of jury, judgment was entered for defendant. Plaintiff appeals. Reversed.

*Herman K. Cohen* and *David M. Miro*, for plaintiff.

*Thomas A. E. Weadock (Lewis J. Weadock,* of counsel), for defendant.

BUTZEL, J. Plaintiff, as beneficiary under a policy issued by defendant company upon the life of Henry Shiovitz, her husband, brought suit to recover $2,000, the face amount of the policy. Shiovitz died very suddenly about 18 months after the policy was issued. It contained a provision that in case of death of the insured through self-destruction at any time within two years from the date of the policy, the liability of the company would be limited to repayment of the amount theretofore paid for premiums. It also provided that in case of death, the defendant would have the right and opportunity to examine the body and make an autopsy, unless prohibited by law. The death of insured is conceded by defendant. It, however, contends that decedent committed suicide and that it is liable solely for the premiums that it had received. This amount plaintiff refused to accept when tender was made.

The facts relating to the death of the decedent are not clear. While he may have suffered business losses and family disappointments, no serious difficulties such as might constitute a motive for suicide were shown to exist at the time of his death. At one time he had been a successful merchant, but at the time of his death, he was buying and selling cash registers and typewriters and using the basement of his home as a workshop, where he cleaned the cash registers and typewriters. For this purpose he used potassium cyanide in liquid form which causes speedy death to one who either swallows or inhales it. On the day of his death, decedent arose early in the morning, shaved, let the dog out, brought in the milk bottle, and then went to the cellar to look after

the furnace. When he came upstairs, according to
the testimony of his son who had arrived from his
own home, decedent stated he was "so sick." The
son first tried to summon a doctor, and then called
the police. A patrol wagon was called and decedent
was taken to a hospital. The doctor at the hospital
testified that when he saw decedent, life was extinct.
The policemen testified that when they took decedent
in the patrol wagon to the hospital, he was very red
in the face and had foam about his mouth. There is
no testimony, however, that such symptoms are in-
dicative of cyanide poisoning or only appear in such
a case. The coroner's certificate, signed with the
coroner's name by a doctor connected with the coro-
ner's office, recited decedent's death and added:
"The cause of death was suicide. Cyanide poison-
ing." The body was released to two relatives of de-
cedent, who signed a letter stating that they were
satisfied that deceased committed suicide by taking
cyanide and they refused to permit an autopsy. No
demand for an autopsy was ever made on the benefi-
ciary until a year and a half later when a demand
was made by motion in the course of the instant suit.
The court denied the motion to have the body ex-
humed and an autopsy made. No error is assigned
because of the latter ruling. The relatives who re-
fused the autopsy claim that for religious reasons
they did not want an autopsy and they had no direct
knowledge as to the cause of death. Had a demand
been properly and reasonably made on the benefi-
ciary, the defendant could have insisted on an au-
topsy under the terms of the policy.

The son, called as a witness by defendant, denied
that on the way to the hospital, he said to his father,
"Dad, dad, it was all my fault." The two policemen
who were with the son then were called by defendant

and testified that he did make such statement. Without discussing the propriety of calling other witnesses to refute the statements of one's own witness, the words attributed to the son do not show that it was a case of suicide. A detective, who visited the home of decedent an hour and a half or two hours after his death and interviewed plaintiff and her 13-year old daughter was permitted to refer to and read a memorandum he had made at the time and which stated that he was told that decedent came from the basement and stated to his daughter that he had taken poison, and that "it is presumed he took a portion of cyanide." The court without objection excluded the memorandum as to what the detective had been told. Outside of establishing the fact that there was cyanide in the basement, the balance of the testimony in no way showed the manner of death. Plaintiff, the widow, testified she never had stated that decedent had committed suicide; that he neither had business nor family troubles; that he had been sick the night before he died, that he had a headache and his heart ached; that he worked every day.

Both of the parties made timely motions for directed verdicts, which at first were denied. The jury, upon being unable to agree, was discharged. Defendant then moved for judgment, claiming the court should have granted defendant's previous motion to direct a verdict in its favor and that the overwhelming weight of evidence was in defendant's favor. As both parties moved for a directed verdict without reserving the right to go to the jury, the case may be considered as one tried without a jury. *Cardinal* v. *Reinecke*, 280 Mich. 15.

In *Curth* v. *New York Life Ins. Co.*, 274 Mich. 513, we again held that the presumption of law was

against suicide, and that on the disappearance of the presumption through the presentation of evidence to rebut it, the ultimate burden of proving suicide rested upon the defendant, who must meet this burden by a preponderance of evidence. See, also, *Burnham* v. *Interstate Casualty Co.,* 117 Mich. 142; *Waldbauer* v. *Michigan Bean Co.,* 278 Mich. 249.

There can be no question but that some of the testimony that was introduced, objected to, and but partly stricken gives rise to a strong suspicion that decedent met death through self-destruction. However, when we apply the rules of evidence to such testimony, we find that it should have been excluded. Consequently defendant failed to sustain the burden of proving suicide and plaintiff is entitled to a judgment.

The judge permitted the introduction of the coroner's certificate and report. In 1925, 2 Comp. Laws 1915, § 5607, making a coroner's certificate *prima facie* proof of death, was repealed by Act No. 343, Pub. Acts 1925 (2 Comp. Laws 1929, § 6594). The verified proof of death furnished by the beneficiary of a policy to the insurer is competent evidence as an admission of the cause of death, but is not conclusive so that it cannot be varied or contradicted by a showing that the insured died from some other cause. *Kudla* v. *Prudential Ins. Co. of America,* 272 Mich. 555. The verified proof of death submitted in the instant case did not include the coroner's report. Defendant wrote to plaintiff's attorney for a certified copy of the proceedings before the coroner and in transmitting a copy of the report, plaintiff's attorney distinctly denied its correctness as to the cause of death and stated that it was based on hearsay. Therefore there was no admission of its correctness. The coroner's certificate was not admissible to prove

the cause of death. *Bishop* v. *Shurly,* 237 Mich. 76;
*Powers* v. *Loyal Protective Ins. Co.,* 266 Mich. 153.
It is claimed, however, that it is admissible as a
record made in the regular course of ''business''
under Act No. 15, Pub. Acts 1935 (amending 3 Comp.
Laws 1929, § 14207). The act, as stated in *Gile* v.
*Hudnutt,* 279 Mich. 358, contains its own limitations.
As there was no autopsy, the statement of cause of
death constituted pure hearsay and was of no evi-
dentiary force. Testimony of other circumstantial
evidence, tending to show suicide, properly objected
to, falls for the same reason.

A copy of the entire policy was not included in the
record. Both parties in their briefs concede that it
contained a clause providing for double indemnity in
case of accidental death and defendant contends that
as plaintiff brought suit only for the face of the pol-
icy, she admitted that death was not accidental. It
was plaintiff's right to bring suit for only the face
of the policy. Had she attempted to prove an acci-
dental death, she might have been confronted with
the same difficulty defendant encountered in trying
to prove suicide. The love of life is natural. Sui-
cide is so rare that the presumption is against self-
destruction. When it does occur, it frequently is
almost impossible to prove. Stripped of the eviden-
tiary force of the coroner's report and certificate as
to the cause of death, and disregarding the state-
ments of others that come within the hearsay rule,
we find that defendant not only has not sustained
the burden of proof, but has produced no testimony
of sufficient evidentiary force so as to prove self-
destruction. Even though we may not be convinced
that it was not a case of suicide, defendant did not
meet the burden of proof and we are constrained to
set aside the judgment for defendant and remand the

case for entry of judgment for plaintiff for the face amount of the policy and interest, in accordance with the motion made at the trial.   Plaintiff will recover costs.

FEAD, C. J., and NORTH, WIEST, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.