## CONNECTICUT MUT. LIFE INS. CO. v. LANAHAN.

### No. 8265.

Circuit Court of Appeals, Sixth Circuit.
June 4, 1940.

Mandate Amended June 27, 1940.

See 113 F.2d 935.

W. J. Shaw and W. J. Weipert, both of Detroit, Mich. (Miller, Canfield, Paddock & Stone, of Detroit, Mich., on the brief), for appellant.

James R. Thomas, of ·Detroit, ·Mich. (James R. Thomas and Marshall F. Troester, both of Detroit, Mich., on the brief), for appellee.

Before HICKS, SIMONS, and ARANT, Circuit Judges.

SIMONS, Circuit Judge.

The appellant, an insurer, challenges a judgment entered against it upon a jury's verdict of liability under an insurance policy issued on the life of William C. Lanahan, deceased husband of the appellee. The defense was suicide, the defendant counting upon a provision of the policy that if the insured died by self-destruction within two years from the date of its issuance, it was liable only for the premiums paid. The bases for the challenge are alleged errors of the court in its instructions to the jury, exclusion of evidence, and failure to direct a verdict for the appellant on the ground that the only. reasonable hypothesis for the death of the insured was self-destruction.

 The deceased had succumbed to poisoning from illuminating gas. We find no error in the court's withdrawal from the evidence of·a·coroner's certificate and that of a physician reciting that suicide was the cause of death. While the certificates had been furnished to the appellant, in pursuance of appellee's obligation to file proofs of death, they were accompanied by a letter denying the correctness of the statements therein as to the cause of death, with the express assertion that the conclusions reached in the documents were based on hearsay and not in anyway binding upon the claimant who expressly denied that death was the result of suicide. A Michigan Statute (2 C.L. '15, § 5607), making a coroner's certificate prima facié proof of death, was repealed in 1925 by Act 343, Public Acts 1925 (2 C.L.1929, § 6594). While it has been held that a verified proof of death furnished by the beneficiary is competent evidence as an admission of the cause of death, Kudla v. Prudential Ins. Co. of America, 272 Mich. 555, 262 N.W. 407, yet where in ·transmitting such proofs the. plaintiff distinctly denies their correctness as to the cause of death therein stated, such proofs are not admissible to prove the cause of death. Shiovitz v. New York Life Ins. Co., 281 Mich. 382, 387, 275 N.W. 181; Powers v. Loyal Protective Ins. Co., 266 Mich. 153, 253 N.W. 250; Bishop v. Shur-ly, 237 Mich. 76, 211 N.W. 75. Nor are such records admissible as made in the regular course of business under Act No. 15, Public Acts 1935, since the statements therein constitute pure hearsay and have no evidentiary force. Gile v. Hudnutt, 279 Mich. 358, 272 N.W. 706.

 The errors alleged to have been made in the instructions of the court, and asserted to be prejudicial, include several statements of the District Judge to the effect ·that the presumption against suicide is one that may not be overcome. It·is manifest that these were but slips of the tongue, corrected before the jury finally retired to consider its verdict. More important is the clear implication in the court's instructions that a burden rests upon the defendant to overcome the presumption against suicide by a preponderance of the evidence. It is conceded that the general rule in respect to the presumption against suicide, is applicable in Michigan, and.that the presumption is not to be treated as evidence and disappears when testimony is offered to rebut it. Stuckum v. Metropolitan Life Ins. Co., 283 Mich. 297, 277 N.W. 891; Shiovitz v. New York Life Ins. Co., supra; Abbott v. Metropolitan Life Ins. Co., 282 Mich. 433, 439, 276 N.W. 506. Compare New York Life Ins. Co. v. Ross, 6 Cir., 30 F.2d 80; Harrison v. New York Life Ins. Co., 6 Cir., 78 F.2d 421. In view, however, of the colloquy between court and counsel in·the presence of the jury, which followed this direction in which the court conceded that, upon production of evidence supporting the defendant's case, the presumption against suicide is overcome and vanishes, it would be difficult to say· that the error was not effectively cured, although in view of the conclusion we reach upon the denial of a directed verdict we find it unnecessary so to decide.

 The principal ground for the appellant's grievance is, as indicated, the failure of the court to grant the. motion for per-emptory instructions made in its behalf. It is its contention that the only permissible inference to be drawn from the undisputed facts is that the insured committed suicide. This requires consideration of the circumstances under which death occurred. While courts are reluctant to withdraw from the jury an issue as to the cause of death where suicide is the defense, in view of the presumption that love of life is natural and the impulse to self-destruction rare, and.

will refuse to do so where the facts and circumstances permit a reasonable inference to be drawn that death was the result of some other cause, yet where they exclude inferences other than that the deceased intentionally destroyed himself, it becomes the duty of the court to direct a verdict for the defendant. American Nat. Bank v. Continental Casualty Co., 6 Cir., 70 F.2d 97; Home Life Ins. Co. of New York v. Moon, 4 Cir., 110 F.2d 184; Metropolitan Life Ins. Co. v. Smith, 7 Cir., 65 F. 2d 967; Mutual Life Insurance Co. v. Gregg, 6 Cir., 32 F.2d 567. The Michigan court is in accord with the general rule in this respect. Abbott v. Metropolitan Life Ins. Co., supra.

So far as the evidence in the case is undisputed, it appears that the appellee and the insured spent the day of death with guests in their home. The deceased retired sometime after one o'clock in the morning, but a half hour or so thereafter he was heard to arise, inquire for his slippers, and leave the room. Sometime later, her sleep being disturbed, the appellee arose, and upon reaching the upper hallway detected the odor of gas and heard two "thuds." Upon arrival at the door connecting kitchen and dining room on the floor below, she was unable to open it but determined that the kitchen was filled with gas. After returning to the bedroom above to make sure that the door leading to it was closed to prevent the entrance of gas, she telephoned the police and a neighbor. The neighbor arrived first and entry was effected to the kitchen by breaking the lock of the outer door. Lanahan was found on a runner rug on the floor, lying in a sleeping position with his head resting on his left arm. He was dead. Two of the burners in the gas stove were open and unlighted. There were no marks or bruises on the body and the clothing was not disarranged. The kitchen was saturated with gas. There were no coking utensils upon the stove, and there was no soot or discoloration on Lanahan's fingers.

The kitchen had four doors and a stairway leading to a fifth door on the second floor level. All of the doors and windows were securely closed. The door between kitchen and dining room was a swinging door equipped with a bolt operating from the dining room side only, and it had been bolted. Against the door leading from the kitchen to the garage a rug had been placed, and another rug had been pushed against the bottom of the door to the child's bedroom at the top of the stairway leading from the kitchen. In the dining room were two bottles and partly filled glasses of beer.

Lanahan had separated from his first wife in 1926, and was divorced in 1935. Six months before his death the appellee had also filed a bill in which she had alleged drunkenness, acts of extreme and repeated cruelty, and the possession of an ungovernable temper, as grounds for divorce. The bill was subsequently withdrawn. Up to a short time before his death, Lanahan had been employed by the William C. Lanahan Company, engaged in merchandising butter and eggs, with financial assistance from the United States Warehouse Company of Detroit. At the time of the incorporation of the Lanahan Company he had subscribed for 40 shares of its stock, giving his personal note therefor. A short time later the note was canceled and the capital stock surrendered, so that from 1937 on the deceased had no financial interest in the company though he continued as its manager. The company showed operating losses in 1938, and thereafter the Warehouse Company declined longer to finance its transactions and decision to wind it up was communicated to Lanahan shortly before his death. A collateral activity, described as "hedging operations" with the White City Provision Company, also showed operating losses in January and February of 1938, and substantial portions of such losses were charged to Lanahan's account, though the final computation had not yet been disclosed to him. Two weeks before his death, on March 7, 1938, Lanahan was informed of the winding up of the Lanahan Company and the closing of his $75 weekly drawing account. For several weeks he had not been at his office. The last premium on his insurance was paid by the Lanahan Company at the instance of his secretary after a futile attempt to borrow, and charged to his account.

Insofar as the circumstances last above recited seem to provide a motive for self-destruction, they are controverted by evidence that the deceased was always a cheerful, normal and good natured person, with no periods of despondency and moroseness; that his home life was happy except during periods when he drank to excess; that he had always manifested a great love for his child, and that he was optimistic in respect to rebuilding his for-

378

tunes by purchasing or engaging in a new business. If the physical facts permit an inference other than suicide as a cause of death, the question of motive was undoubtedly an issue to be submitted to the jury. We give no consideration to the testimony of Lanahan's divorced first wife to the effect that the appellee had related to her a statement of the deceased, made a week before his death, that "A week from that day he would be dead; that he had seen a taste of this life and would see a taste of the next one." The conversation being denied the jury was at liberty to disregard it if the issue as to the cause of death might otherwise be submitted to it.

These circumstances aside, the question still remains as to whether the manner of death permits an inference by reasonable men that it was due to causes other than deliberate and intentional self-destruction. It is quite true, as contended by the appellee, that there was no burden upon her to establish a plausible explanation for the death other than by suicide, and that she has made out her prima facie case when she has proved the death of the deceased. Nevertheless, if the circumstances pointing to suicide reasonably exclude all other inferences, there is no issue to be submitted to the jury. Were it possible for reasonable men to infer that Lanahan came to his death through foul play, or through accident, no matter how slight the proof, an issue as to the cause of death would have been raised. There is no scintilla of evidence pointing to foul play. There remains the possibility of accident, but the evidence completely excludes its probability. The bolting of the dining room door, the placing of the rugs and the turning on of the gas were deliberate, intentional acts of the deceased. The theory that the pilot lighter failed to ignite the escaping gas because it was in bad order, is untenable. If the pilot was alight in a closed room so saturated with gas as was the Lanahan kitchen, an explosion would have resulted. None occurred. If the pilot was out, then the deceased must have been instantly aware of the fact that the burners failed to ignite, or if not aware of it then, must have become aware of it by the odor of escaping gas long before the room was so filled with it as to prove lethal. In the absence of cooking utensils or food there can be no tenable inference that the gas was turned on for purpose of food preparation, and the bolted dining room door, the carefully placed rugs

and the position of the body completely exclude the theory of accident.

We have examined with care the illuminating gas cases cited, by the appellee, in Michigan and other states, including Powers v. Loyal Protective Ins. Co., supra; Metropolitan Life Ins. Co. v. Broyer, 9 Cir., 20 F.2d 818; Travelers' Ins. Co. v. Allen, 8 Cir., 237 F. 78; Paul v. Travelers' Ins. Co., 112 N.Y. 472, 20 N.E. 347, 3 L.R.A. 443, 8 Am.St.Rep. 758; Towne v. Northwestern M. L. I. Co., 1937, 58 Idaho 83, 70 P.2d 364, 365. In each of them is found a circumstance, such as the disconnected gas hose in the Michigan case, the open transom in the Nebraska case, the telephone directory found fastened to the gas jet, after a drinking bout, in the Broyer case, which points to an act which might reasonably be construed as unintentional and the death therefore accidental. There is no such circumstance in the present case. All of the physical facts point unerringly to self-destruction. The court should have granted the motion for directed verdict.

The judgment is reversed and the cause remanded for new trial in conformity herewith.