MARJORIE ALLISON, Appellee, v. BANKERS LIFE COMPANY,
Appellant.

No. 45568.

SEPTEMBER 16, 1941.

REHEARING DENIED JANUARY 23, 1942.

Hansen & Wheatcraft, for plaintiff-appellee.

Lorentzen & Brooke, for defendant-appellant.

GARFIELD, J.—The issue upon the trial was whether death of the insured resulted ''from bodily injury effected solely through external, violent and accidental cause'' within the terms of two policies issued by defendant-appellant, thereby entitling appellee to double indemnity. The face amount of the policies had been paid. The answer was, in effect, a general denial. At the conclusion of the evidence, appellant moved for a directed verdict on the grounds that the showing made was insufficient to support a finding of accidental death but, on the contrary, disclosed suicide as a matter of law. Since the overruling of the motion furnishes the principal basis for appellant's claim to a reversal of the verdict and judgment against it, a discussion of the evidence is necessary. Appellee is entitled to the most favorable construction of which the evidence is fairly susceptible.

The dead body of Harold Allison, the insured, was found on Sunday afternoon, July 23, 1939. It was lying back of his parked automobile, out of doors, in a secluded wooded area about three miles west of Jefferson. It was stipulated that death was caused by carbon monoxide poisoning.

For five and one-half months prior to his death, Allison, age thirty, was agency manager in Jefferson for the Des Moines Register & Tribune. He supervised some thirty paper carriers and conducted drives for new customers. During that period, Allison had earned four different prizes for obtaining new readers for the newspapers, a radio, a jacket, an electric toaster, and a pin. His average earnings were about $35 a week. When he died he had $396 in the bank, $600 on deposit with his employer, and his car was paid for. There was no shortage in his accounts with his employer.

Appellee gave the following testimony which was not contradicted: ''Our marriage was a happy one and we never had

any domestic trouble. Harold was a jolly fellow. He was proud of his home and interested in his home life. Harold and I went to picnics frequently, we played ball in the yard almost every evening, played with our dog and went riding. We frequently went on picnics at the place where Harold was found dead. We would take the dog there and turn him loose. There was a flowing well at that picnic spot and Harold was very fond of the water which he thought was the best he had ever tasted. We bought eggs from a farmer who lived on the same road on which the well was situated about once a week."

One of the paper boys, testifying as a witness for appellant, said: "We had been to the flowing well on picnics more than once and the spot was one of his [Allison's] favorite spots."

Appellee further testified: "Harold was not a drinking man. He would sometimes take a social highball if somebody offered it and he thought he should. I have never seen him intoxicated or take more than two drinks. I have never known him to gamble. During the last 8 or 9 months of his life I knew him to suffer no illness. From 1933 until 1940 he had only been sick a part of one day and that was from something he ate."

A week before Allison's death, he had taken appellee to Des Moines, their prior home, for a visit. On Wednesday, July 19, Allison received an affectionate letter from his wife, which he answered the same day, in terms equally affectionate. The reply letter indicated Allison was then lighthearted. It contained no hint of suicide. Decedent had planned to go to Des Moines to see his wife on the Sunday his body was discovered. He had intended to get eggs on Saturday from the farmer who lived near the scene of the tragedy.

When the body was discovered on Sunday afternoon, it lay on its back at the left rear of the car. Appellant's witness, the city marshal of Jefferson, said the head was approximately 2½ to 3 feet from the end of the exhaust pipe. Allison's shirt and necktie had been removed, leaving the body bare above the waist. There were numerous places on the exposed part of the body where ants and insects had chewed the flesh. There was a cut about a half-inch long on the top of the head which "looked as if a sharp point had gouged out a little flesh." No injury to the skull was found. There was blood on the grass

under the head. Appellant offered medical testimony that the head injury would be insufficient to cause unconsciousness. However, one of the two medical witnesses said: "Whether a blow such as deceased may have sustained would cause unconsciousness would depend on the circumstances under which the blow was rendered. Unconsciousness has been caused by no more severe blow than that."

When the body was discovered, the ignition switch to the car was on, the hand throttle pulled out somewhat. The gasoline tank was empty, the battery down, the water in the radiator down, and perhaps all gone. No tools were found nearby. His hands were not greasy. An empty purse was found in one of Allison's pockets and an empty money bag in the car. On Saturday mornings the carrier boys paid Allison the money they had collected. Allison was last seen alive about 2:30 Saturday afternoon.

Allison's shirt had a smudge spot about 8 inches in diameter, the bottom of which was 13 inches above the bottom of the shirt. The top of the spot was 8 inches below the neckband. Appellant caused the smudge spot to be analyzed and it was found to have been caused by hydro-carbon oil, put there by some kind of pressure. When the body was found, the shirt "tail" was tucked in at the waist of the trousers. Appellant's witness, McHugh, testified that the shirt was "bunched up" under decedent's arm when the body was discovered. There is testimony that decedent frequently removed his shirt, especially when working on the car. "He did quite a bit of 'monkeying around' with his car. About two weeks before his death he put on a new exhaust pipe."

There is some other testimony to which we will make later reference.

I. The burden to prove accidental death rested upon appellee. Taylor v. Pacific Mutual, 110 Iowa 621, 623, 82 N. W. 326. This is conceded.

II. Death resulted from inhaling carbon monoxide gas. If this was unintentional, it was accidental; if, however, the monoxide was purposely or intentionally inhaled, death was suicidal. Wiger v. Mutual Life Ins. Co., 205 Wis. 95, 236 N. W. 534; Powers v. Loyal Protective Ins. Co., 266 Mich. 153, 253 N. W.

250, 251; Standard Acc. Ins. Co. v. Van Altena, 67 F. 2d (7th C. C. A.) 836; Metropolitan Life Ins. Co. v. Broyer, 20 F. 2d (9th C. C. A.) 818. For a discussion of the meaning of "accidental death," see Lickleider v. Iowa St. Trav. Men's Assn., 184 Iowa 423, 166 N. W. 363, 168 N. W. 884, 3 A. L. R. 1295.

III. The evidence bearing on the vital question of intent of decedent, as in practically all cases of this character, is circumstantial. Indeed, intent, being a state of mind, is seldom capable of proof by direct evidence. At the outset, appellee had the benefit of the well-recognized **presumption that death** was accidental and not suicidal. This presumption is frequently referred to as a strong one which "ought not to be displaced by slight contrary proof." 20 Am. Jur. 216, section 220.

IV. A large part of appellant's brief is devoted to the contention that the presumption against suicide does not have the effect of evidence. Although a number of authorities are cited, no Iowa decision is among them. No Iowa case so holds. We have repeatedly held to the contrary. See Reddick v. Grand Union Tea Co. and authorities cited, 230 Iowa 108, 119, 296 N. W. 800, 805. "There is a sharp conflict of authority on the question whether the legal presumption against suicide * * * is to be weighed by the jury as evidence." Anno., 103 A. L. R. 185, 186. We have recognized the rule that the presumption against suicide has probative value in a case where plaintiff beneficiary sought to recover double indemnity for accidental death and had the burden of proof on that issue. Waddell v. Prudential Life Ins. Co., 227 Iowa 604, 611, 288 N. W. 643. See, too, Caldwell v. Iowa State Trav. Men's Assn., 156 Iowa 327, 136 N. W. 678.

V. We are unable to agree with appellant's contention that there is no evidence of accidental death and that suicide is established as a matter of law. We think the case was for the jury.

Decedent's disposition, character and habits, and the absence of any motive for suicide, are circumstances pointing to accident and not suicide. Beckley v. N. Y. Life, 229 Iowa 1007, 1011, 295 N. W. 844, 846, 847; Tully v. Prudential Life Ins. Co., 234 Wis. 549, 556, 291 N. W. 804, 806; Powers v. Loyal

Protective Ins. Co., *supra* (see page 156 of 266 Mich., page 251 of 253 N. W.). As said by Kenyon, J., in Mutual Life Ins. Co. of New York v. Hatten, 17 F. 2d (8th C. C. A.) 889, 892: "There is generally a motive to be found for suicide." "Without motive one would hardly expect intentional self-destruction." International Life Ins. Co. v. Carroll, 17 F. 2d (6th C. C. A.) 42, 43, 50 A. L. R. 362. The testimony of one witness that decedent complained of a headache the last morning he was seen alive is wholly insufficient to establish a motive for self-destruction. Appellant concedes the absence of any provable motive for suicide. The first persons shown by the record to have discovered the body were Hans Giese and his wife. This was about Sunday noon. Giese testified: "I started to stop but my wife said 'Let's go on. *He must be asleep.*' His shirt was off and he just looked as if he were asleep." It did not occur to the Gieses that Allison had committed suicide. The next person to come upon the body, so far as the record shows, was appellant's witness, McHugh, accompanied by his lady friend. He testified: "My first impression was that this man was out there resting on a hot afternoon."

Much is said in argument about the secluded character of the place where death occurred. Yet the evidence shows it was frequently used for picnics by the Allisons and others. It was one of Allison's favorite spots.

Concededly, death from carbon monoxide in the open air is extremely unusual. We quote from appellant's brief: "In no case has any court had occasion to pass * * * upon a carbon monoxide death in the open air." If decedent had intended suicide by inhaling monoxide gas, it is unlikely he would have attempted it outdoors. This is a circumstance favorable to appellee. That the place where death occurred and the surroundings are important considerations, see Jovich v. Benefit Assn., 221 Iowa 945, 949, 950, 265 N. W. 632.

The presence of the shirt with the smudge spot does not necessarily point to suicide, for several reasons. The jury could well have found that the shirt could not have formed a tent to confine the exhaust fumes. The shirt was only 29 inches long from neckband to bottom. As above observed, the smudge spot was 13 inches from the bottom and 8 inches from the neckband.

There is evidence that Allison's head was at least three feet from the exhaust. The shirt was partially tucked under decedent's waistband. The jury could have found that the shirt was "bunched up" under his arm when the body was discovered. There was nothing about the shirt to arouse the suspicions of either of the witnesses, Giese and McHugh.

It is argued that appellee does not advance any theory as to just how death occurred. In Waddell v. Prudential Ins. Co., 227 Iowa 604, 609, 288 N. W. 643, 646, where, as above stated, the burden to show accidental death in order to recover double indemnity rested upon plaintiff, this court says: "But it is not necessary that appellee set up or prove any particular theory of the exact manner of the insured's death." See, too, Jovich v. Benefit Assn., 221 Iowa 945, 950, 265 N. W. 632; Metropolitan Life Ins. Co. v. Broyer, 20 F. 2d (9th C. C. A.) 818.

VI. The contention is made that other causes of death, including suicide, are not eliminated by the evidence. In Latham v. Des Moines Elec. Co., 229 Iowa 1199, 1207, 296 N. W. 372, 375, we say, speaking through Oliver, J.: "Plaintiff was not required to prove his theory of causation by evidence so clear as to exclude every other possible theory. The evidence must be such as to make that theory reasonably probable, not merely possible, and more probable than any other hypothesis based on such evidence." In Whetstine v. Moravec, 228 Iowa 352, 291 N. W. 425, there are cited many of our prior decisions on the quantum of proof by circumstantial evidence. This court there says (page 362 of 228 Iowa, page 430 of 291 N. W.), speaking through Bliss, J.: "In a civil case * * * [proximate cause] need be established only by the preponderance or greater weight of the evidence, and not beyond a reasonable doubt. And this is true whether the testimony be direct or circumstantial."

The degree of proof by circumstantial evidence is discussed at some length in Jones v. Eppley Hotels Co., 208 Iowa 1281, 1291, 227 N. W. 153, 157, where the following is quoted with approval from Gordon v. Chicago, R. I. & P. R. Co., 146 Iowa 588, 594, 123 N. W. 762, 764: " 'The case so made is not to be disposed of by the suggestion that other reasonable theories may be advanced to explain plaintiff's injury. Even in a case

depending on circumstantial evidence alone to establish negligence, the plaintiff is .not bound to negative every other conceivable theory or hypothesis which ingenuity may invent to account for his injury. It is only where opposing theories are equally reasonable and equally consistent with the proved or admitted facts that plaintiff must fail as a matter of law.' '' See, too, Boles v. Hotel Maytag Co., 218 Iowa 306, 310, 253 N. W. 515, and cases cited.

In the light of the above observations, we think the jury could have found that accidental death was reasonably probable and more probable than suicide.

VII. Under our decision in Reddick v. Grand Union Tea Co., 230 Iowa 108, 296 N. W. 800, and the cases therein cited, there can be no doubt that this record presents a jury question, if the burden were on appellant to prove suicide. We do not think an opposite holding is justified solely by the fact that appellant has merely the duty of going forward with the evidence to rebut the presumption of accidental death rather than the burden to prove suicide. In the Reddick case, supra, we quote with approval from Ryan v. Metropolitan Life Ins. Co., 206 Minn. 562, 571, 289 N. W. 557, 561, as follows (see page 118 of 230 Iowa, page 805 of 296 N. W.) : '' 'In rare cases is the evidence of suicide so persuasive as, not only to dispel the presumption, but also to require decision, as matter of law, that death was not accidental.' '' In the Ryan case the burden was on the plaintiff to prove accidental death and not on the insurer to prove suicide.

That a jury question was presented, see Waddell v. Prudential Ins. Co., 227 Iowa 604, 288 N. W. 643. See also Warbende v. Prudential Life Ins. Co., 97 F. 2d (7th C. C. A.) 749, 753; Tschudi v. Metropolitan Life Ins. Co., 72 F. 2d (8th C. C. A.) 306; Metropolitan Life Ins. Co. v. Broyer, 20 F. 2d (9th C. C. A.) 818, three suits to recover for accidental death from inhaling carbon monoxide or other gas in buildings, where the burden rested on plaintiff-beneficiary. See, too, in addition to the Reddick case, supra, Wiger v. Mutual Life Ins. Co., 205 Wis. 95, 236 N. W. 534, and Standard Acc. Ins. Co. v. Van Altena, 67 F. 2d (7th C. C. A.) 836, where death was caused by monoxide poisoning in closed garages. We

also cite Mutual Life Ins. Co. v. Hatten, 17 F. 2d (8th C. C. A.) 889, where the burden ·to prove accidental death rested on the beneficiary, and Powers v. Loyal Protective Ins. Co., 266 Mich. 153, 253 N. W. 250 (death by asphyxiation). In many, if not all, of the above cases the evidence pointed to suicide more strongly than in the present case and yet in· each it was held there was a jury question.

VIII. We have carefully considered appellant's complaints against the instructions of the ·trial court and find no reversible error.

Appellee's motion to dismiss the appeal is overruled.—Affirmed.

MITCHELL, SAGER, BLISS, HALE, and OLIVER, JJ., concur.

MILLER, C. J., and STIGER and WENNERSTRUM, JJ., dissent.

MILLER, C. J. (dissenting)—I am unable to agree with the majority opinion herein and respectfully dissent.

Division I of the opinion recognizes that the burden of proof on the issue of accidental death was upon appellee. Division II recognizes that, in determining whether the death was accidental, the decisive question is the intent of the decedent; if the inhalation of carbon monoxide gas was unintentional, it was accidental, if purposely or intentionally inhaled, death was suicidal. Division III recognizes that, on the vital question of intent, the evidence is circumstantial. The question then is, was the circumstantial evidence sufficient to warrant submission of the issue to the jury.

Appellant cites the case of Asbach v. Chicago, B. & Q. Ry. Co., 74 Iowa 248, 250, 37 N. W. 182, 183; wherein we state:

"A theory cannot be said to be established by circumstantial evidence, even in a civil action, unless the facts relied upon are of such a nature, and are so related to each other, that it is the only conclusion that can fairly or reasonably be drawn from them. It is not sufficient that they be consistent, merely, with that theory, for that may be true, and yet they may have no tendency to prove the theory. This is the well-settled rule,

and it is manifest that under it plaintiff's theory is not established. The facts relied upon to prove it are quite as consistent with the theory that the animal went upon the bridge of his own volition, or that he was frightened by something else than a train, and ran upon it, as with it. Plaintiff, then, has not shown the cause of the injury."

The foregoing pronouncement of this court has been cited with approval and followed by this court a great many times. As I see it, our question is twofold. First, does the circumstantial evidence herein meet the requirements of this rule? And second, if it does not, has the court pronounced a different rule?

The evidence is undisputed that the body was found in a secluded spot, lying to the rear of the automobile with the head from 18 to 36 inches from the exhaust pipe of the automobile. The switch was on, the gasoline tank empty, the battery dead, the hand throttle and choke pulled out, the water in the radiator boiled out. There is no evidence that would dispute the inescapable inference that the deceased left the motor running with the hand throttle and choke pulled out and that it continued to run until the battery was dead, the gas tank empty, and the radiator dry. The evidence is entirely consistent with the theory that the deceased intentionally placed himself within the range of the carbon monoxide gas, which accomplished his death.

We have recognized that absence of proof as to the motive for suicide does not prevent a finding of suicide. Inghram v. National Union, 103 Iowa 395, 402, 72 N. W. 559. We have expressly recognized that the presumption against suicide is not sufficient to overcome circumstantial evidence of suicide. Gavin v. Des Moines Life Ins. Co., 149 Iowa 152, 157, 126 N. W. 906; Warner v. Equitable Life Ins. Co., 219 Iowa 916, 920, 258 N. W. 75.

The circumstances upon which appellee relies herein are a stipulation that death was due to inhalation of carbon monoxide gas, the presumption against suicide and evidence which would tend to negative a motive for suicide. As opposed to these circumstances, appellant has introduced substantial evidence that the inhalation of gas was intentional. Granting that the evi-

dence is consistent with both theories, the question for this court to determine is, did the party having the burden of proof produce circumstantial evidence of the quantum that would permit the jury to say that accidental death was the only conclusion that can fairly or reasonably be drawn from such circumstances or, to put it otherwise, is the fact of suicide equally consistent with the proved and admitted facts?

I am disposed to the view that the location of the burden of proof in this case is decisive. I agree with the majority that, were this a case where the burden of proof was on the defendant insurance company, a jury question would have been presented. My reason for so believing is that the circumstances were not sufficient to negative the theory of accidental death. Where I disagree with the majority is on the effect that must be given to the fact that here the burden of proof was on the plaintiff-appellee. It was her responsibility to negative the possibility of suicide. This, in my judgment, she failed to do. I would reverse.

STIGER and WENNERSTRUM, JJ., concur in this dissent.