ABBOTT *v.* METROPOLITAN LIFE INS. CO.

1. DEATH—PRESUMPTION AGAINST SUICIDE—EVIDENCE.
   Presumption against suicide vanishes upon introduction of testimony of eyewitnesses from which the fair inference may be drawn that death is in fact suicidal and thereafter controverted issues must be determined from the testimony presented.

2. APPEAL AND ERROR — CIRCUMSTANTIAL EVIDENCE — QUESTION FOR JURY.
   Whether or not a court is justified in holding that there is an issue for the jury to pass upon notwithstanding direct and positive testimony of eyewitnesses establishing a fact directly contrary to the inference sought to be drawn from the opposing circumstantial evidence must be determined to some extent on the facts and circumstances of each case.

3. INSURANCE—ACCIDENT INDEMNITY—SUICIDE—EVIDENCE.
   In action against insurer under life insurance policy to recover additional indemnity for alleged accidental death of insured, uncontradicted, direct, positive, credible and unimpeached testimony of eyewitnesses that he committed suicide by placing himself in front of an approaching railroad train *held*, to justify trial judge in entering judgment for defendant *non obstante veredicto* for plaintiff notwithstanding fact that it was not observed whether or not insured who was more or less intoxicated, stumbled into path of the train.

Appeal from Wayne; Chenot (James E.), J. Submitted October 12, 1937. (Docket No. 103, Calendar No. 39,745.) Decided December 14, 1937.

Action by Arthur J. Abbott, as administrator of the estate of Andrew Golaszewski, against Metropolitan Life Insurance Company, a corporation, on insurance policies for additional indemnity for acci-

dental death. Verdict for plaintiff. From judgment for plaintiff on defendant's motion for judgment *non obstante veredicto* in an alleged insufficient amount, plaintiff appeals. Affirmed.

*Louis Starfield Cohane* and *Regene Freund Cohane,* for plaintiff.

*Bulkley, Ledyard, Dickinson & Wright (R. William Rogers,* of counsel), for defendant.

North, J. This is a suit by an administrator to recover money claimed to be due on three insurance policies carried by plaintiff's decedent. On trial by jury plaintiff had a verdict for $2,428.59. Defendant admits liability in the amount of $1,450.50. Following verdict on defendant's motion for judgment *non obstante veredicto* the trial court entered a judgment in the amount admitted by defendant. Plaintiff has appealed.

So far as the question involved on this appeal is concerned these three policies contain the same provision and we will hereinafter consider them as one policy. The death of the insured occurred March 17, 1935. Under the terms of his insurance a larger sum was payable if he met with an accidental death. This is the phase of the insurance which is substantially uniform in each of the three policies and which gives rise to plaintiff's claim of a larger amount than that admitted by defendant. It is plaintiff's claim that the insured met with an accidental death; but defendant asserts that his death was suicidal in which event the insurer is not liable for the additional amount claimed. The policy contains a provision that "no accidental death benefit will be paid if the death of the insured is the result of self-destruction, whether sane or insane." The issue submitted to the jury was whether the insured's death was accidental or

suicidal.  Appellant contends that under the testimony taken at the trial a question of fact was presented on this issue and that the trial judge committed error in setting aside the verdict rendered in plaintiff's favor and in ordering judgment for the lesser amount admitted by defendant.  The following pertinent facts appear in the record:

Between 3 and 4 o'clock on Sunday afternoon, March 17, 1935, the insured, then 52 years of age, was struck by the locomotive of a Michigan Central freight train near the Bonzano street crossing in Ecorse.  His badly mangled body was found under the rear end of the train composed of 22 cars.  The undisputed testimony discloses that on the afternoon in question the insured was more or less intoxicated.  At Bonzano street there are six or seven parallel lines of railroad tracks extending in a northerly and southerly direction and crossing the street substantially at right angles.  Plaintiff's decedent was seen while walking in a southerly direction for some considerable distance along the east side of the most easterly track, which is a passing track of the Michigan Central Railroad.  The next track to the west is its main line.  The ballast of the passing track was composed of cinders, that of the main track crushed stone.  When plaintiff's decedent reached a point 400 or 500 feet south of Bonzano street he turned to the west and went across the passing track, over the intervening space of 10 or 15 feet where he stepped in between the rails of the main line.  Just at this time the freight train was approaching from the south at about 30 miles per hour.  The engineer, who was called as a witness by defendant, saw plaintiff's decedent when on the easterly edge of the right of way and at that time the train was 500 or 600 feet from decedent.  The engineer testified that the deceased

remained at or near the easterly line of the right of way while the train was approaching but that thereupon he walked over to the main track immediately in front of the approaching train, that he put his hands to the ground and lay down between the rails with his head toward the locomotive, and after deceased lay down he pulled his coat collar up around his head and placed his head on his arm as though it were a pillow, that at the time plaintiff stepped upon the main line the train was approximately 150 feet from him, the whistle of the locomotive was then blowing for the Bonzano crossing, and the witness did not see deceased trip or stumble. On cross-examination the engineer testified:

"*Q.* You said you could not tell whether he made any motions with his hands or feet in an attempt to get up, because you could not see him that well?

"*A.* I could not see any motion.

"*Q.* You could not have seen it at that distance, it happened too fast?

"*A.* I would not say it happened too fast, but I did not see any.

"*Q.* You would not say that he did not?

"*A.* I would not say that he did not or did.

"*Q.* Because you did not notice?

"*A.* Because I did not notice, no. * * *

"*Q.* I say, when this man went down in between those rails there, you could not tell whether he stubbed his toe against that rail and fell down, could you?

"*A.* I could not see his feet, I did not see what he was doing with his feet. * * *

"*Q.* All you saw was that he bent over and his hand touched the ground and then his body lay down in between the rails?

"*A.* That is all I seen.

"*Q.* Whether he tripped and fell there or not, you could not say and you don't know?

"*A.* I could not swear to that.   *   *   *

"*Q.* On the side track here there were ties across the track itself?

"*A.* Oh, yes, they have ties under all of them.

"*Q.* Nothing else in between the tracks as you walk along?

"*A.* Yes, pretty rough.

"*Q.* It is easy for a man under those conditions to stumble, is it not?

"*A.* Well, of course, a fellow can stumble if you don't lift your feet up, anybody is liable to stumble.

"*Q.* You say the minute after he lay down or fell down, whichever it was, then it was over in a flash, the train struck him, and that was all there was to it?

"*A.* Yes."

The only other eyewitness, who was also produced as a witness by the defendant, was a Mr. Thomas Roberts, whose observation was made from a window in his house about 400 feet from the point of accident. His testimony on direct examination does not differ materially from that of the engineer. On cross-examination he testified:

"*Q.* Were you watching this man or were you watching his feet?

"*A.* Well, I was looking at the man.   *   *   *

"*Q.* As he walked in between the rails there, as he walked along there, his feet naturally were below the level of the rails, weren't they?

"*A.* Well, I suppose they was.

"*Q.* Now you don't know whether or not he stumbled and hit one of those rails as he walked along there, do you?

"*A.* Well, I could not say that he did not or that he did.   *   *   *   All I can say is what I seen."

In this redirect-examination the following appears:

"*Q.* When the deceased went down between the rails, did he go down rapidly or slowly?

"*A.* Well, I think I have made that very definite. He laid down. He did not fall at all. He laid down."

Appellant, claiming that it tended to disprove suicide, offered rebuttal testimony that deceased was a happy, contented man, that he had some money, but not how much, that he loved his children and at times bought them clothing, that he never threatened suicide, that he was of the Catholic faith which holds that committing suicide is a mortal sin and prevents burial in consecrated ground. In this connection it may be noted that there is also testimony that plaintiff was divorced from his wife approximately 10 years prior to his death, that none of his five children lived with him but instead he lived alone. In an attempt to lessen the probative force of the testimony of the witness Roberts, appellant also offered rebuttal testimony that prior to his testifying in court as to decedent having lain down in front of the approaching train, the witness had said decedent jumped in front of the train, and further that the witness was reluctant to state what he knew about the case to those who were investigating in behalf of the plaintiff.

As bearing upon appellant's theory of his right to have the verdict of a jury on the record presented, we quote the following from his brief:

"We concede it to be the law that if the testimony of the sole eyewitnesses to the accident produced by the defendant in this case to prove suicide was certain, positive, credible, uncontradicted and unmitigated, either by interest in the case, evasiveness, partiality, the surrounding circumstances, or their

cross-examination, then it would have been the court's duty to grant defendant's judgment *non obstante veredicto.*

"Is there any testimony in this case, therefore, which casts doubt upon the testimony of the witnesses, Markey and Roberts, as given in their direct-examination so as to make the question of weight to be given their evidence a matter for the determination of the jury?"

It should be borne in mind that notwithstanding the holding of courts that there is a presumption against death having been the result of suicide, still as soon as testimony, especially of eyewitnesses to the death, is presented from which the fair inference may be drawn that the death was in fact suicidal, the presumption to the contrary vanishes and is no longer for consideration in the case. Thereafter the controverted issues must be determined from the testimony presented. *Shiovitz* v. *New York Life Ins. Co.,* 281 Mich. 382. It is not always easy to determine whether testimony of various facts and circumstances only indirectly and more or less remotely connected with the real issue, even in the aggregate, will justify a court holding that there is an issue for the jury to pass upon notwithstanding the direct and positive testimony of eyewitnesses establishing a fact directly contrary to the inference sought to be drawn from the opposing circumstantial evidence. It is probably quite impossible to formulate a hard and fast uniform rule; but instead to some extent decision in each case must turn on the facts and circumstances of that case. In the instant case there is the testimony of two disinterested witnesses who had a detailed view of the actual happening of the death of the insured. The only conclusion which can be drawn from the testimony of these eyewitnesses is that the insured deliberately placed his

body upon the railroad track in front of a closely approaching train. There was no direct, substantive testimony produced in this case from which the fair inference can be drawn that the insured stumbled and accidently fell in front of the train. Neither of the eyewitnesses testified to having seen anything in the conduct of the insured which would .tend to establish plaintiff's claim that the insured stumbled. It cannot be said that the statement of each of the eyewitnesses that he would not swear that the insured did not stumble is an admission that he did stumble or he might have stumbled and fallen before the approaching train. Instead the only fair inference to be drawn from this testimony is that the insured did not stumble because neither of these two eyewitnesses who were observing him saw any action on his part which would justify such a conclusion. Nor do we think that plaintiff's rebuttal testimony as to the insured being a happy and contented man, one having some regard for his children, and a member of a particular religious faith tends to weaken or impeach the testimony of the eyewitnesses. Instead, if it is of any probative force, it tends only to resurrect the presumption against suicide; but that presumption ceased to exist in this case when direct testimony to the contrary was produced and thereafter it was of no force and effect nor was the testimony of facts and circumstances from which such a presumption naturally arises sufficient to overcome the direct, unimpeached and credible testimony of eyewitnesses. *Metropolitan Life Ins. Co.* v. *Smith* (C. C. A.), 65 Fed. (2d) 967. We quote briefly from adjudicated cases which are so similar in facts as to be quite persuasive.

"The deceased was struck by the engine of a train going west through Gulfport, about 9 o'clock in the

morning, at a place, not on a street or public highway, but between two streets, which the railroad track crossed. Uncontradicted testimony of eyewitnesses was to the following effect: The deceased was in the vicinity of the place where she was killed some time before the train came. Before the train was in sight she was sitting on the side of the roadbed. When the train was approaching, and when it was about half a mile from where the deceased was struck, the railroad track between those points being straight, the engineer, who was on the right side of the engine, saw the deceased walking, in the direction the train was going, in a pathway on the right-hand side of the track, where she was in no danger from a passing train. She continued to walk in that pathway until the train got pretty close to her. Then she turned around, looked at the train, waiting there in the pathway until the train came closer, then went on the track, stood between the rails facing the train, and knelt or squatted down on the track in front of the rapidly approaching train.   *   *   *   It is not fairly open to dispute that the uncontroverted evidence that deceased's death was voluntary was of such conclusive character as to warrant the setting aside of a verdict in favor of the plaintiffs." *Connally* v. *Railroad Co.* (C. C. A.), 4 Fed. (2d) 539.

"In cases where the question is presented of whether death resulted from accident or suicide, courts as well as juries are reluctant to reach the conclusion of suicide. Sometimes they shut their eyes to the facts and resort to presumptions to avoid such an untoward result. In this case, however, not only are all the facts in evidence, but those facts are of such character as to afford a sufficient evidentiary basis for a finding as to the insured's intention with respect to the acts which culminated in his injury and death. For that reason the aid and comfort so frequently sought from the presumption against suicide must be foregone. Notwithstanding that the pre-

sumption may not be invoked, in passing upon the evidence it should be kept in mind that the instinct of self-preservation is deeply implanted in all living things and that such instinct is an ever active principle of life; nor on the other hand should it be forgotten that men do frequently voluntarily destroy themselves. With all these things in mind, and assuming further that there was no apparent motive for suicide, we have searched the record in vain for a single fact or circumstance from which the inference may be legitimately drawn that the insured's fall from the car was involuntary—unintentional. On the contrary many of them point all but irresistibly to the conclusion that the fall was his voluntary act. It has been suggested that many things might have happened, unknown to the witness or unobserved by him, which would have put an entirely different aspect upon the occurrences which he did see. Or that the insured may have been thrown from the car by hidden forces whose operations were not discernible to the witness. All of which may be true. But an affirmative finding that the insured came to his death by accidental means must find support, if at all, in the evidence in the case and not in speculation or conjecture." *Landau* v. *Pacific Mutual Life Ins. Co.,* 305 Mo. 542 (267 S. W. 370).

In the instant case the uncontradicted, direct, positive, credible and unimpeached testimony of the eye-witnesses fully justified the trial judge in entering judgment *non obstante veredicto* in the amount named. The judgment is affirmed, with costs to appellee.

Fead, C. J., and Wiest, Butzel, Bushnell, Sharpe, Potter, and Chandler, JJ., concurred.