STUCKUM *v.* METROPOLITAN LIFE INS. CO.

1. EVIDENCE—CAUSE OF DEATH—PRESUMPTION AGAINST SUICIDE.
   Where death occurs in an unknown manner, the presumption of law is against suicide.

2. SAME—PRESUMPTION AGAINST SUICIDE—BURDEN OF PROOF.
   Presumption against suicide disappears when testimony is offered to rebut it and such presumption is not to be treated as evidence, but the ultimate burden of proof of showing suicide by a preponderance of evidence rests upon one asserting it.

3. SAME—JUDICIAL NOTICE—JACKS IN AUTOMOBILES.
   It is not unusual to carry jack handles and jacks in the rear of automobiles.

4. SAME—JUDICIAL NOTICE—POSSIBILITY OF ACCIDENTS—SHOTGUNS.
   It is common knowledge that accidents happen with shotguns and that it is not always necessary to pull the trigger in order to cause them to be discharged, there being a possibility of discharge through impacts, jars, or worn or defective mechanism.

5. INSURANCE—CAUSE OF DEATH—SUICIDE—EXPLANATION BY BENEFICIARY.
   In action by beneficiary under life insurance policy in which defense of suicide was interposed, plaintiff does not have burden of proving a reasonable explanation of the manner of death of deceased or to give any explanation whatever.

6. SAME—LIFE INSURANCE—SUICIDE—BURDEN OF PROOF—QUESTION FOR JURY.
   In action against insurer under life insurance policy where defense of suicide is interposed, unless evidence discloses that only reasonable hypothesis of death is that of suicide, the case must be submitted to a jury as the presumption is against suicide and insurer must show suicide by a preponderance of evidence.

7. Same—Suicide—Accident—Discharge of Shotgun.

    In action under life insurance policy in which insurer asserted death was by suicide, defendant *held*, not to have sustained burden of showing cause of death was inconsistent with any reasonable hypothesis other than suicide, there being circumstances sufficient to sustain jury's finding death was due to accidental discharge of shotgun.

8. Same—Cause of Death—Shotgun Wounds—Evidence.

    Question of whether death from shotgun wounds was result of suicide or accident *held*, properly submitted to jury under evidence presented and instructions given, where plaintiff's testimony tended to show deceased was engaged in shooting crows which had been bothering their cornfield, testimony as to whether deceased made remarks indicating that he was contemplating suicide was in dispute and finding of jack handle in rear of car could not be said to be conclusive proof that deceased committed suicide by using it to push the trigger.

Appeal from Van Buren; Warner (Glenn E.), J. Submitted January 5, 1938. (Docket No. 39, Calendar No. 39,810.) Decided February 24, 1938.

Assumpsit by Bertha Stuckum against Metropolitan Life Insurance Company on a life insurance policy. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Earl H. Burhans*, for plaintiff.

*Gore, Harvey & Fisher*, for defendant.

McAllister, J. Plaintiff's son was killed by a discharge of a shotgun and she sues defendant as the beneficiary of a life insurance policy, which was taken out by deceased. On trial before a jury plaintiff received verdict and judgment for the amount due according to the terms of the life insurance policy. On appeal defendant claims that the evidence

conclusively established that deceased came to his death by suicide; and, because it is claimed that the policy in question excluded liability in case of suicide, the court erred in refusing to direct a verdict of no cause of action.

Merle Stuckum, the deceased, a young man who lived with his family, was a truck driver and drove such vehicles usually during the nighttime. On Saturday night, September 5, 1936, he went out with a group of friends to a dance and beer garden. He had been drinking beer before he started on the party, and during the course of the evening, he continued to drink beer. While he was with his friends an altercation took place, resulting in the plaintiff's decedent trying to fight with one of his friends, because of an argument with regard to the latter's wife.

One witness states that deceased afterward wanted to go to another place to dance and became angry when the party refused to go; that he finally said he was tired of everything; that his family interfered with his affairs; and that he was going to end everything.

After leaving the group at 2 o'clock the following morning, deceased went home and asked his mother if she did not want to drive with him to Kalamazoo to see her daughter. He further asked her if on the following week she would wash his clothes which he had left in another village, and upon her agreeing to do so, he drove his car to the village and returned with his soiled clothes. He then had some conversation with his mother and discussed the crows which had been bothering them on the farm. He told his mother that he was going into the woods to shoot crows and at 5 o'clock in the morning left the house with his shotgun.

A few hours later, at 7:30 o'clock, he was found dead in his automobile, sitting upright behind the wheel, shot through the right side. The front right-hand window of the car was open and the shotgun was found lying on the ground about nine feet from the car. No one heard the shot or knew how he was killed. The coroner signed a certificate of accidental death.

Experiments later made by the police showed that the gun, if resting on a stump, upon being fired, would recoil through the air about seven feet. In the rear of the car, behind the front seat, there was found a jack handle and this circumstance has given rise to defendant's theory that deceased held the gun against his side, resting it through the open window and pushed the trigger with the jack handle. Plaintiff's theory is that the deceased was pushing the gun out through the window with the muzzle toward him when it accidentally "went off."

The trial court submitted the question of whether deceased had committed suicide to the jury for determination as a question of fact; and plaintiff was awarded verdict and judgment.

Defendant claims that as a matter of law the court should have directed the jury to return a judgment of no cause of action, for the reason that the evidence conclusively showed that the deceased had committed suicide.

Defendant's chief reliance is placed upon the testimony of Palma Randall, one of the members of the party at the tavern, who testified that deceased had told her on the evening before his death, that he was "tired of everything" and was "going to end everything." The testimony of this witness was flatly contradicted by others who were present at the time deceased is alleged to have made this statement.

The sister of deceased testified that she went with her husband to see Mrs. Randall about two weeks after the death of her brother and that at that time Mrs. Randall ''said that she never was so surprised in all her life as when she heard of Merle's death. She also said at that time that she didn't believe he did it. * * * If he did do it, he never so much as ever mentioned it to her.''

Much significance is attached by defendant to the finding of the jack handle in the back of the car, on the theory that it definitely proved how deceased killed himself. One of defendant's witnesses, the deputy sheriff, who went out to investigate the death, found that the jack handle was on the floor behind the front seat. He also thought that the jack itself was on the back seat cushion at that time. The woods near which deceased was found were about one-half mile from his home. Crows had been bothering the Stuckum family. When deceased was preparing to leave his mother's house with his shotgun, he secured the cartridges from the cupboard drawer in his home in the presence of his mother. Before leaving the house he went into the bedroom and asked Louis Stuckum if he would go with him to shoot crows.

Where death occurs in an unknown manner, the presumption of law is against suicide. *Burnham* v. *Interstate Casualty Co.,* 117 Mich. 142. And where testimony is offered to rebut this presumption it disappears and such presumption is not to be treated as evidence. *Watkins* v. *Prudential Insurance Co.,* 315 Pa. 497 (173 Atl. 644, 95 A. L. R. 869). But the ultimate burden of proof on the issue of suicide rests upon the defendant and it must meet this burden by a preponderance of the evidence.

In *Curth* v. *New York Life Ins. Co.*, 274 Mich. 513, 522, Mr. Justice BUTZEL, speaking for the Court said:

"We believe that on the question of suicide, the evidence in the instant case presented a question for the determination of the jury, that this was not a case where the evidence showed that the only reasonable hypothesis was that of suicide and was inconsistent with any other reasonable explanation."

In *Shiovitz* v. *New York Life Ins. Co.*, 281 Mich. 382, 388, this Court said:

"We find that defendant not only has not sustained the burden of proof, but has produced no testimony of sufficient evidentiary force so as to prove self destruction. Even though we may not be convinced that it was not a case of suicide, defendant did not meet the burden of proof."

In the case before us, it is disputed by witnesses whether deceased made any remarks indicating he was planning to take his own life. The finding of the jack handle could not be said to be conclusive proof that deceased committed suicide by using it to push the trigger. It is not unusual to carry jack handles and jacks in the rear of automobiles. It is common knowledge that accidents happen with shotguns, and that it is not always necessary to pull the trigger in order to cause them to be discharged. Careful men are cautious in handling such firearms for they realize that they are dangerous and that there is the possibility of being injured by their discharge, caused through impacts, jars, or worn or defective mechanism. Such happenings are within the realm of possibility. The request of the deceased to his mother shortly before his death to arrange to have his laundry washed the following week and his de-

sire expressed to his brother to go out with him on the occasion on which he met his death are circumstances inconsistent with an intention to commit suicide. But the burden of proof is not upon plaintiff to give a reasonable explanation of the manner of death of deceased or, for that matter, is she required to give any explanation whatever.

Unless the evidence shows that the only reasonable hypothesis is that of suicide, and that it is inconsistent with any other reasonable explanation, the case must be submitted to a jury. The presumption is against suicide and the burden of proof was upon defendant relying upon a defense of suicide to prove its cause by the preponderance of the evidence.

We do not believe that the evidence showed that the death of plaintiff's deceased was inconsistent with any reasonable hypothesis other than suicide. There were circumstances in this case that might indicate an accident. The question was for the determination of the jury and was submitted to them in accordance with proper instructions. The trial court was not in error in refusing to direct a verdict for defendant.

The judgment is affirmed, with costs to plaintiff.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, CHANDLER, and NORTH, JJ., concurred.