EPSTEIN v. HELVERING, Commissioner of Internal Revenue.

No. 4760.

Circuit Court of Appeals, Fourth Circuit.

June 10, 1941.

William D. Harris, of Washington, D. C. (Wm. J. Neale, of Washington, D. C., on the brief), for petitioner and cross-respondent.

F. E. Youngman, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on · the brief), for respondent and cross-petitioner.

Richard B. Barker, of Washington, D. C., as amicus curiae.

Before SOPER, and NORTHCOTT, Circuit Judges, and MOORE, District Judge.

SOPER, Circuit Judge.

This case presents for consideration the petition of Morris M. Epstein for review of a decision of the United States Processing Tax Board of Review and the cross petition of the Commissioner of Internal Revenue for a review of the same decision. The decision was rendered by the Board under the provisions of Title VII of the Revenue Act of 1936, §§ 901 to 917, 49 Stat. 1747, 7 U.S.C.A. §§ 623 note, 644 to 659, in a proceeding brought before it to review the rejection by the Commissioner of Epstein's claim for refund of processing taxes paid under the Agricultural Adjustment Act of May 12, 1933, 48 Stat. 31, 7 U.S.C.A. § 601 et seq. The tax imposed by the latter act was held unconstitutional in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, and subsequently Title VII of the Revenue Act of 1936 was passed to regulate refunds of the tax and was held constitutional in Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143. Section 906 of this Act established a special and exclusive procedure with respect to the refunding of the taxes before a Board of Review, and also provided for a judicial review of the Board's decisions by the Circuit Courts of Appeals. See Honorbilt Products, Inc., v. Commissioner, 3 Cir., April 30, 1941, 119 F.2d 797.

Section 902 provides in substance that no refund of any amount paid as tax under the Agricultural Adjustment Act shall be made or allowed unless the claimant proves that he bore the burden of such amount, and has not been relieved thereof nor reimbursed therefor, nor shifted such burden in any manner whatsoever.

Section 907 (a) provides that where the refund claimed is for an amount paid as processing tax under the Agricultural Adjustment Act, it shall be prima facie evidence that the burden of the tax was borne by the claimant to the extent that the average margin per unit of commodity processed was lower during the tax period than the average margin was during the period before and after the tax period. On the other hand, if the average margin during the tax period was not lower, it is prima

facie evidence that no part of the tax was borne by the claimant but was shifted.

Subsection (b) of section 907 prescribes in detail the method to be used in determining the average margin for the tax period and for the period before and after the tax. The term "tax period" as used in section 907 is defined in subsection (c) thereof as the period during which the claimant actually paid the processing tax, ending on the date with respect to which the last payment was made. The "period before and after the tax" is defined in subsection (c) as the 24 months immediately preceding the effective date of the tax— except in the case of tobacco where the period shall be the 12 months immediately preceding the effective date of the tax— and the six months, February to July, 1936, inclusive, which is the six months immediately following the invalidation of the statute.

For the purposes of the presumption established by section 907 (a), the average margin for the tax period is the average of the margins for all months or portions of months within the tax period, and the average margin for the period before and after the tax period is the average of the margins for all months or portions of months before and after the tax. The margin for each month during the tax period is computed by deducting from the gross sales value of articles processed the total cost of the commodity processed during the month, plus the processing tax paid with respect thereto, and dividing the result by the total number of units of commodity processed. The margin for each month of the period before and after the tax is determined by deducting from the gross sales value of all articles processed from the commodity during the month the cost of the commodity processed during the month, and dividing the result by the number of units of the commodity processed during the month. The average for each period is determined in the same manner as the monthly margins, using total gross sales value, total cost of commodity processed, total processing tax paid, and total units of commodity processed, during such period.

Subsection (e) of section 907 provides that either the claimant or the Commissioner may rebut the presumption established by subsection (a) by proof of the actual extent to which the claimant shifted to others the burden of the processing tax. "Such proof may include, but shall not be limited to * * * Proof that the difference or lack of difference between the average margin for the tax period and the average margin for the period before and after the tax was due to changes in factors other than the tax. Such factors shall include any clearly shown change (A) in the type or grade of article or commodity, or (B) in costs of production."

The taxpayer filed a claim for refund of $2,640.67, but his claim was disallowed by the Commissioner. Thereupon, the taxpayer appealed to the Board of Review where it was found that the actual amount of the processing taxes paid was $2,535.36. The only question before the Board was whether the taxpayer had borne the burden of the tax, and if so, to what extent. After a trial upon the merits, the Board found that the average margin for the tax period exceeded the average margin for the other two periods, and held that a prima facie presumption arose under section 907 (a) that the burden of the tax had been shifted. But, the Board also found that certain items of increased expense, to wit: increased costs of labor, salesmen's commissions, N.R.A. code stamps and revenue stamps, incurred by the taxpayer in the tax period, had increased the statutory margin therein, and the Board therefore held that these items should be taken into consideration in determining to what extent the prima facie presumption had been overcome. Taking these items into consideration, the amount of the refund due the taxpayer was found to be $438.17. The petition of the taxpayer for review filed in this court asserts that a refund of the entire tax paid should have been directed, while the cross-petition of the Commissioner asserts that the allowance ordered by the Board was excessive because the item of increased salesmen's commissions during the tax period was erroneously included in the calculation.

The facts are not in dispute, most of them being set out in a stipulation. During the period, October 1, 1933, to November, 1935, inclusive, when the processing tax was in effect, Epstein was engaged in the processing of handmade cigars in partnership with his brother, a silent partner, in Baltimore, Maryland. He was also engaged in the cigar business operating the same factory for the pre-tax period between October 1, 1932 to September 30, 1933, and for the post-tax period from

February 1, 1936, to July 31, 1936. Prior to January, 1936, the petitioner manufactured high priced cigars to be sold at retail in excess of five cents. Due to the fact that competitors were changing from higher to the lower priced cigars, the taxpayer made a substantial change in his manufacturing program and in 1936 began the manufacture of the more popular 5¢ cigar, using, however, the same kind of tobacco as theretofore. During the period from February 1 to July 31, 1936, 97.668% of the taxpayer's product consisted of the manufacture of this particular type of cigar, and the gross income of the taxpayer practically doubled over the tax period and previous periods. In other words, he did a larger business on a smaller margin of profit. The processing tax on tobacco was 5¢ per pound.

This change in the taxpayer's business during the post-tax period is described in the following finding of the Board: "10. Prior to January 1936 the petitioner manufactured high priced cigars. Due to the fact that competitors were changing from the higher to the lower priced cigars, and there being no further substantial demand for the former, the petitioner made a substantial change in his manufacturing program and in that year began the manufacture of the more popular 5¢ cigar, using, however, the same kind of tobacco as theretofore. He continued, however, to manufacture the higher priced cigars on special order. He also effected certain distributor arrangements in that year by which cigars were sold through distributors. In consequence of these changes the gross business increased from $47,035.60 in 1935 to $93,573.68 in 1936.

■ From the figures contained in the stipulation, the Board found that the average margin for the tax period was $1.358 per pound and the average for the two periods before and after the tax was $1.278 per pound, or an excess in the average margin for the tax period of $.08 per pound. Multiplying this figure by 50,698.-55 (the number of pounds of commodity processed during the tax period), the Board found that the statutory margin for the tax period exceeded by $4,084.51 the statutory margin for the base periods before and after the tax. It is noteworthy, however, that the average margin for the pre-tax period, considered by itself, was

$1.408 per pound, and therefore exceeded the average margin for the tax period of $1.358 by $.05 per pound. Since the tax was $.05 per pound, a comparison confined to these two periods indicates that the taxpayer absorbed all of the tax. On the other hand, the average margin for the post-tax period, considered by itself, was $1.-177 or $.181 less than the average margin for the tax period; and hence a comparison of the two last-mentioned margins indicates that the entire burden was passed on to the consumer. It is manifest from these figures that a comparison of the statutory margins does not furnish a reliable method for the solution of the issue in this case. Such a method is of no value unless, throughout the successive periods, all the factors, except the tax, entering into the manufacture and sale of the goods remain constant.

Taking all these facts into consideration, it was urged by the taxpayer before the Board that in making its decision it should not be governed by the presumption arising from the fact that the average margin for the periods preceding and following the tax period exceeded the average margin during the tax period. It was pointed out that the change in the character of the taxpayer's business in the post-tax period materially influenced the margin in that period, and hence the inclusion of that margin in the comparison of margins required by section 907 (a) of the Act would give a distorted result, that would not show whether or not the taxpayer had shifted the burden of the tax to his customers.

■ Upon the facts presented to it, the Board made the following finding: "13. The petitioner did not increase the cost[1] of the articles processed to include the tax, nor any part thereof, nor did he bill his customers separately or otherwise, nor demand or collect from any of his customers such tax, nor any part thereof, nor is there any agreement, written or oral, with any of his customers by which he may be reimbursed for any amount of such tax upon the recovery thereof."

The Commissioner says that this finding does not constitute a finding that the taxpayer did not shift the tax burden. Our view is to the contrary, as we do not perceive, and neither the Board nor the Commissioner attempts to show, how the tax

---

[1] "Cost" obviously means selling price in this context.

burden could have been shifted unless it was included in the selling price of the manufactured goods or collected from the customers in some other manner. Nevertheless, the Board said in its decision that the contention of the taxpayer that the post-tax period should be eliminated from the marginal computation, should be rejected as inconsistent with the provisions of section 907 of the Act. But, as we have seen, the Board did take into consideration certain items of increased expense incurred by the taxpayer in the tax period, and found that the taxpayer had borne the burden of the tax to a limited extent.

■ We do not think that this decision should be sustained in view of the Board's findings. It gave too great weight to the marginal method required by section 907 (a), (b) and (c), and too little weight to proof of the actual facts permitted by section 907 (e) of the Act. Having found that the comparison of margins resulted unfavorably to the taxpayer, the Board accepted the statutory prima facie presumption, and held that the greater part of the burden of the tax was shifted, notwithstanding the express finding that no part of the tax was added to the sales price of the goods or collected from the customers. Moreover, this weight was given to the marginal method in the face of the further finding that during the post-tax period, a substantial change prevailed in the taxpayer's business in that the selling price of the cigars was reduced while the grade of tobacco used was maintained at the previous level, so that the margin between the cost of the raw material and the selling price of the manufactured goods was necessarily diminished.

■ It is evident that the Board felt itself bound to accept the prima facie presumption as controlling. It is true that the terms of section 907 (e) were not entirely overlooked, because the Board directed that proof of certain increased costs during the tax period should be considered in the final computation; but this direction serves only to emphasize the failure of the Board in its final determination to give due weight to the probative force of its finding that the character of the taxpayer's business was materially changed in the post-tax period. This treatment of the factual situation cannot be upheld, for while the marginal calculation should be made in each case as directed by the statute, it should not be accepted as controlling, if the proof of the actual extent of the shifting of the tax, taken under the authority of section 907 (e) of the Act, leads to a contrary conclusion.[2]

Such an application of section 907 (e) of the Act is not in accord with the interpretation given by the Supreme Court of the United States in order not only to protect the rights of the government and of the taxpayer under the statute, but also to meet the charge of unconstitutionality. In Anniston Mfg. Co. v. Davis, 301 U.S. 337, 351, 355, 57 S.Ct. 816, 81 L.Ed. 1143, the court said:

■■ "Despite the broad language of section 902, we do not think that it should be construed as intended to deny a refund in any case where a claimant is constitutionally entitled to it. We apply the familiar canon which makes it our duty, of two possible constructions, to adopt the one which will save and not destroy. We cannot attribute to Congress an intent to defy the Fifth Amendment or 'even to come so near to doing so as to raise a serious question of constitutional law.' Federal Trade Comm. v. American Tobacco Co., 264 U.S. 298, 307, 44 S.Ct. 336, 337, 338, 68 L.Ed. 696, 32 A.L.R. 786; Panama R. Co. v. Johnson, 264 U.S. 375, 390, 44 S.Ct. 391, 395, 68 L.Ed. 748; Blodgett v. Holden, 275 U.S. 142, 148, 276 U.S. 594, 48 S.Ct. 105, 107, 72 L.Ed. 206. When the Congress requires the claimant, who has paid the invalid tax, to show that he has not been reimbursed or has not shifted its burden, the provision should not be construed as demanding the performance of a task, if ultimately found to be inherently impossible, as a condition of relief to which the claimant would otherwise be entitled. There is ample room for the play of the statute within the range of possible determinations. Impossibility of proof may not be assumed. It cannot be doubted that the requirement has appropriate and valid effect in placing upon the claimant the duty to present fully all the facts pertaining to the question of the shifting of the burden

---

[2] Whether or not the statutory presumption serves only to regulate the burden of proof and disappears entirely from the case when evidence as to the actual incidence of the tax is introduced, we have no occasion to consider in this case in view of the Board's findings.

of the tax and in denying relief where the facts justify a conclusion that the burden has been shifted from the claimant to others. When the facts have been shown it becomes the duty of the Board of Review to make its determination according to the legal rights of the claimant. That is the necessary import of the provision for judicial review, giving authority to the reviewing court to modify or reverse the decision of the Board 'if it is not in accordance with law.' Findings that can properly be made upon the evidence must thus support a decision according to legal right. And, as we have seen, the reviewing court, and finally this Court, may direct the Board 'to enter any designated judgment' to which the claimant is constitutionally entitled and the Commissioner must refund the amount thus determined to be due." 301 U.S. at pages 351, 352, 57 S.Ct. at page 823, 81 L.Ed. 1143.

■ "The stated presumptions are rebuttable. If they work adversely to its interests, petitioner will have ample opportunity to prove all the rebutting facts. Section 907 (e) provides that either the claimant or the commissioner may rebut the presumptions 'by proof of the actual extent to which the claimant shifted to others the burdens of the processing tax.' There follows a detailed provision as to what such proof may include. But that provision is not exclusive. It is expressly stated that the proof in rebuttal shall not be limited to what is thus described. Petitioner urges that the statute requires that this proof shall be of the 'actual extent' to which the burden of the tax has been shifted, and recurs to the argument as to the inherent impossibility of producing such proof. What we have already said with respect to that argument is applicable in this connection. We do not think that Congress was attempting to require the impossible. The permissible, and we think the true, construction of section 907 (e) is that the words 'actual extent' are used in contradistinction to the presumed extent, according to the prima facie presumption to which the proof in rebuttal is addressed. In the light of the context, and of the entire scheme of the administrative proceeding, we are of the opinion that the provision was intended to afford, and does afford, full opportunity to the claimant to present any evidence which may be pertinent to the questions to be determined by the Board of Review and which may be

appropriate to overcome any presumption which might be indulged either under section 907 (a) * * * or otherwise." 301 U.S. at pages 355, 356, 57 S.Ct. at page 824, 81 L.Ed. 1143.

The decision of the Board did not conform to this interpretation of the act. It is therefore reversed, and the case is remanded to the Board in order that it may enter a judgment directing the refund to the taxpayer, of the sum of $2,535.36, with costs.

Reversed.

