## COMMISSIONER OF INTERNAL REVENUE v. BAIN PEANUT CO. OF TEXAS.
### No. 10151.

Circuit Court of Appeals, Fifth Circuit.

March 15, 1943.

Rehearing Denied April 14, 1943.

---

Joseph M. Jones, Sewall Key, J. Louis Monarch, and Helen R. Carloss, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Raymond F. Brown and Sidney B. Gambill, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., for petitioner.

B. L. Agerton and A. E. Brooks, both of Fort Worth, Tex., for respondent.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

The Processing Tax Board of Review awarded the sum of $38,847.25 to the Bain Peanut Company in an action brought under Title VII of the Revenue Act of 1936[1] relating to refunds of processing taxes collected under the taxing provisions of the Agricultural Adjustment Act. The questions raised by the petition for review turn upon the application of undisputed facts to various provisions of the refunding statutes.

Respondent, a corporation engaged in the business of processing peanuts in Texas, paid the sum of $96,113.75 as processing taxes under the A. A. A. The tax was declared unconstitutional,[2] and Congress made provision for the refund of all amounts so paid to any claimant who could show that he bore the burden of the amount of the tax sought to be recovered, and had not shifted such burden, nor been relieved thereof nor reimbursed therefor, directly or indirectly, in any manner whatsoever.[3] On June 22, 1937, respondent filed its claim for refund in the sum of $17,793.-25, later amending the claim by increasing the amount thereof to $19,780.20. The Commissioner disallowed the claim in full on the ground that respondent failed to establish that it bore the burden of the tax. On appeal therefrom, the Processing Tax Board of Review found that respondent had borne the burden of the tax to the extent of $38,847.25, allowed it to amend its claim

to conform to the proof, and entered decision for a refund of $38,847.25.

Section 907 of the Act[4] provides that, where a claim for refund is made of an amount actually paid, it shall be prima facie evidence that the burden of such amount was borne by the taxpayer to the extent (not to exceed the amount of the tax) that the average margin per unit of the commodity processed was lower during the tax period than was the average margin during the period before and after the tax. The margin was the figure reached by deducting, from the gross sales value of all articles processed from the commodity during each month, the cost of the commodity processed plus the processing tax paid with respect thereto, and by dividing the remainder by the total number of units of the commodity processed during the month. Section 907 (b) (5) provided that the cost of the commodity processed during each month should be (a) the actual cost of the commodity if the accounting procedure of the claimant was based thereon, or (b) the product computed by multiplying the quantity of the commodity processed by the current prices at the time of processing for commodities of like quality and grade in the markets where the claimant customarily made his purchases.

Respondent, in its amended claim and at the hearing before the Board, proceeded upon the theory that it was entitled to compute the cost of the commodity processed by the method described in Section 907(b) (5) (b), either because its accounting procedure was not based upon actual cost or because it had the privilege to elect whichever of the two methods it desired. Under its computations thus made, there being no disagreement as to the other factors entering into the calculation, the margin per unit of the commodity processed during the period before and after the tax exceeded the margin per unit during the tax period by $.0040418. Having reached this figure, the taxpayer invoked the statutory presumption that it had borne the burden of the tax to the extent of $38,847.25, the product of the margin decrease per unit multiplied by 9,611,375, the number of units processed during the tax period.

The contentions made by the Commissioner are these: (1) That the cost of the

[1] 7 U.S.C.A. § 648, 49 Stat. 1747, 1748.

[2] United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914.

[3] 7 U.S.C.A. § 644.

[4] 7 U.S.C.A. § 649.

commodity processed, for the purpose of the margin computation, could have been determined on the basis of actual cost of the commodity processed, despite the loss of identity of the various purchases by commingling of the fungible commodity, by the adoption of the first-in-first-out theory of cost accounting; that whenever the actual cost method is available it is the exclusive method whereby the cost of the commodity processed may be computed; and that a computation of the taxpayer's margin on the basis of the actual cost of the commodity, using the first-in-first-out theory, admittedly raises the presumption that the taxes were not borne by the taxpayer; (2) that, whether or not the taxpayer's proof enabled it to invoke the presumption in its favor, the presumption was rebutted by undisputed evidence that the burden of the tax had been shifted; (3) that, in any event, the taxpayer was not entitled to refund of an amount in excess of $19,780.20, since the claim filed with the Commissioner was required to set forth the aggregate of the amount of the tax that had been borne by the taxpayer, together with supporting data, and the amount of the claim so filed was only $19,780.20.

■ Turning to the first contention of the Commissioner, we think the finding of the Board that the actual cost method was not available to this taxpayer is supported by substantial evidence. Respondent purchased some of its peanuts at its place of business, some at peanut farms; some were bought by salaried employees, others by commission men. The peanuts were stored in bags in various warehouses, were shipped about, and ultimately were consumed in the mills without regard to source of supply or period of storage. From the moment of storage, the peanuts lost their identity with respect to when purchased, from whom purchased, and the purchase price, but it clearly appears that the peanuts first bought were not the peanuts first processed. It was respondent's custom to store the peanuts in its warehouses from back to front, and to remove them for shipment to the mills from front to back.

■ When the final draft of the Act was under consideration in Congress, it was proposed that the first-in-first-out theory should be incorporated in the section as a theoretical basis of assuming actual costs, but the Act as passed adopted the language recommended by various governmental departments, and omitted express recognition of this accounting principle.[5] As enacted, the section provides method A for the computation of the margin in all cases where the taxpayer's mode of accounting enables actual cost to be calculated; but where the character of the commodity or the accounting practice of the taxpayer does not admit of computation of actual cost, method B becomes available and provides a formula by which an assumed actual cost may be computed. We think method A is exclusive if available, but that it may be used only where the actual cost of the commodity processed may be computed without resort to theoretical assumptions; and that method B was intended to be used in all other instances, including this one.

■ On the basis of the taxpayer's margin computations, it made out a prima facie case with the aid of the statutory presumption afforded by Section 907(a). This done, the burden of going forward with the evidence shifted to the Commissioner, and required of him proof either that the taxpayer actually shifted or otherwise escaped the burden of the amount claimed, or that the presumption relied upon by the taxpayer was not properly available to it. The Commissioner undertook this burden, and attempted to rebut the presumption by uncontradicted proof that the taxpayer adopted and followed a general practice of shifting the burden of the tax by billing the tax separately to its vendees and by increasing sales prices in every possible circumstance.

Section 907(e) of the Act provides that the statutory presumption may be rebutted by proof of the actual extent to which the claimant did not bear the burden of the tax, including but not limited to proof that the taxpayer modified existing contracts of sale, changed the sales price of the article processed by substantially the amount of the tax, billed the tax as a separate item to any vendee, or indicated in any writing that the sales price included the amount of the tax. There was much proof of this nature before the Board; but it was the Board's view that, although the evidence showed the taxpayer had escaped the burden of the tax paid to an appreciable extent, it failed to show that the burden of taxes in excess of $57,266.50, the amount paid but not sought to be refunded, had not been borne by the taxpayer; it accord-

5 See Congressional Record, Vol. 80, part 8, pages 8662, 9077.

ingly held that the presumption had not been rebutted, and awarded the refund.

In actions to recover taxes illegally collected by the United States, the burden is upon the plaintiff throughout the trial to prove that the defendant has in its possession money that in equity and good conscience should be refunded to the plaintiff. Where the refund claimed is for an amount paid as processing taxes, the claimant is further required by statute to prove that he bore the burden of the tax and never shifted it in any manner. Proof of a lower profit during the tax period is made prima facie evidence of the ultimate fact in issue, but the only effect of this statutory rule is to create an inference that the burden of the tax was borne by the claimant.

The law governing burden of proof is a matter of substance.[6] It is never the function of a rebuttable presumption to shift the burden of proof; its office is to supply an inference which may take the place of proof not otherwise produced.[7] If the statutory presumption here invoked should be given the probative force accorded to it by the Board, it would have the effect of shifting the burden of proof; but it does not have this effect, because it is a mere rule of evidence and not of substantive law.[8] It is a presumption that yields readily to evidence, direct or circumstantial, and has no effect in excess of a mere temporary inference of fact that casts upon the defendant the duty of producing sufficient evidence to rebut it. When that is done, the inference is at an end; it disappears entirely, and the burden of proof remains as it existed in the beginning.[9]

The presumption obviously was created in recognition of the difficulty attendant upon proving the extent of the tax burden either borne or shifted, since no reason existed, at the time the tax was levied, for believing that recording such information might be of future benefit. We think the plain purpose of Congress in creating the presumption was to obviate the necessity of strict proof in cases where neither the claimant nor the Commissioner could show directly whether the burden of the tax was or was not borne.[10] If no proof was available, and if the presumed margin of gross profit of the claimant was lower during the tax period than otherwise, the probability existed that he bore the burden of the tax; likewise, if the presumed margin was not lower during the tax period, it was reasonable to assume that the tax burden was shifted.

A claimant under the statute may make out his case, if his margin is shown to be lower during the tax period, by invoking the presumption, but in all cases where the prima facie proof is so established, the Commissioner may rebut the presumption by proof that the burden of the tax was shifted, which proof may include evidence that sales prices of the product were increased by the approximate amount of the tax imposed, and that the amount of the tax was billed separately. The uncontradicted evidence adduced by the Commissioner showed that this taxpayer actually did shift the burden of the tax; the presumption was rebutted; it was completely dissolved; and the burden reverted to the claimant to come forward with evidence or suffer judgment to be entered against it. The decision of the Board being favorable to it on the basis of the presumption alone, respondent had no reason to present proof of the actual extent to which it bore the burden of the tax. Opportunity should be afforded the taxpayer to make such proof upon remand.

[6] Central Vermont R. Co. v. White, 238 U.S. 507, 35 S.Ct. 865, 59 L.Ed. 1433, Ann.Cas.1916B, 252.

[7] Howard v. United States, 5 Cir., 125 F.2d 986, 991.

[8] Mobile, J. & K. C. R. Co. v. Turnipseed, 219 U.S. 35, 42, 31 S.Ct. 136, 55 L.Ed. 78, 32 L.R.A.,N.S., 226, Ann.Cas. 1912A, 463.

[9] Mobile, J. & K. C. R. Co. v. Turnipseed, supra; New Orleans & N. E. R. Co. v. Harris, 247 U.S. 367, 38 S.Ct. 535, 62 L.Ed. 1167. Cf. Western & A. R. R. v. Henderson, 279 U.S. 639, 49 S.Ct. 445, 73 L.Ed. 884.

In providing that the presumption established by said Section 907(a) might be rebutted by various kinds of proof, other proof was not excluded. In order to avoid the rule expressio unius est exclusio alterius, the Congress took pains to provide that "such proof may include, but shall not be limited to," that expressly mentioned. This emphasizes the intention of the statute to create an ordinary presumption that might be rebutted by any competent evidence, either direct or circumstantial.

[10] Cf. Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143; Epstein v. Helvering, 4 Cir., 120 F.2d 427; I. L. Walker Tobacco Co. v. Commissioner, 6 Cir., 129 F.2d 464.

Since we hold that the decision should be reversed, it is unnecessary to decide the remaining question, i. e., whether the claimant was entitled to a refund in excess of the amount set forth in the claim filed with the Commissioner. Though further proceedings herein are anticipated, it is not likely that this question will arise again. The order appealed from is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

HUTCHESON, Circuit Judge (dissenting).

I agree with the majority that the taxpayer made out a prima facie case. I agree with them, too, that if the record supports their view that the Commissioner under 907(e)[1] rebutted the prima facie showing which taxpayer made under 907(a), the Board erred in finding for the taxpayer without requiring him to make further proof. I find myself, however, in agreement with the statement of the Board that the Commissioner (respondent before the Board) attempted, but failed, to rebut the presumption established by the taxpayer (petitioner).[2] I am in agreement, too, with the view of the Board that the taxpayer is not limited in his recovery to the $19,780.-20 originally set forth as the sum of it, and may recover the full amount of $38,847.25. Pink v. United States, 2 Cir., 105 F.2d 183; Bemis Bros. Bag Co. v. United States, 289 U.S. 28, 53 S.Ct. 454, 77 L.Ed. 1011; Electric Storage Battery Co. v. McCaughn, D. C., 54 F.2d 814; United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619. Cf. Rule 15(b) Rules of Civil Procedure 28 U.S.C.A. following section 723c. I, therefore, dissent from the reversal and remand.

On Petition for Rehearing.

HOLMES, Circuit Judge.

In its petition for rehearing, the respondent takes exception to the statement in our opinion that it is never the function of a

rebuttable presumption to shift the burden of proof, citing Heiner v. Donnan, 285 U. S. 312, 52 S.Ct. 358, 76 L.Ed. 772; but while the language of that opinion at the top of page 329 supports respondent, the decision itself does not, since the court was dealing with a conclusive presumption. It was not dealing with a rebuttable presumption, and its statement that the latter had the effect of shifting the burden of proof was dictum.

As authority for this statement, the court cited Mobile, J. & K. C. R. Co. v. Turnipseed, 219 U.S. 35, 43, 31 S.Ct. 136, 55 L. Ed. 78, 32 L.R.A.,N.S., 226. If we turn to that case, we find that the court was dealing with a disputable presumption. It said in part, beginning at page 42, of 219 U.S., 31 S.Ct. at page 137, 55 L.Ed. 78, 32 L.R.A., N.S., 226: "The law of evidence is full of presumptions either of fact or law. The former are, of course, disputable, and the strength of any inference of one fact from proof of another depends upon the generality of the experience upon which it is founded. * * * Legislation providing that proof of one fact shall constitute prima facie evidence of the main fact in issue is but to enact a rule of evidence, and quite within the general power of government. * * * We are not impressed with the argument that the supreme court of Mississippi, in construing the act, has declared that the effect of the statute is to create a presumption of liability, giving to it, thereby, an effect in excess of a mere temporary inference of fact. * * * The only legal effect of this inference is to cast upon the railroad company the duty of producing some evidence to the contrary. When that is done the inference is at an end, and the question of negligence is one for the jury, upon all of the evidence."

If we compare the Turnipseed case with Western & A. R. R. Co. v. Henderson, 279 U.S. 639, 49 S.Ct. 445, 73 L.Ed. 884, we shall observe the difference between a stat-

[1] "Either the claimant or the Commissioner may rebut the presumption established by subsection (a) of this section by proof of *the actual extent to which the claimant shifted to others the burden* of the processing tax." (Italics supplied.)

[2] "Respondent attempted to rebut the presumption established by the petitioner under section 907(a) of the Revenue Act of 1936 by adducing certain evidence for the purpose of showing that the petitioner

either billed the processing tax to its vendees as separate items or otherwise included the amount thereof in its sales prices. This evidence fails to show with respect to any transaction the *actual extent to which the petitioner may have shifted to others* the burden of the processing tax. Therefore it is held that the petitioner is entitled to a refund under and in accordance with the said prima-facie presumption." (Italics supplied.)

ute that merely supplies an inference of fact in the absence of evidence contradicting such inference, and a statute that creates an inference that is given the effect of evidence to be weighed against opposing testimony. The latter presumption is unreasonable; and, between private parties, violates the due-process clause of the Fourteenth Amendment if created by a state statute and the same clause of the Fifth Amendment if created by an Act of Congress. While there is no question of due process in this case, but merely a question as to the weight and character of the presumption that Congress intended to create, the difference in the nature of the two presumptions is persuasive in arriving at the legislative intent.

We think it is inaccurate to say that a disputable presumption has the effect of shifting the burden of proof. The law as to the burden of proof is a matter of substance,[1] and the substantive law of a case does not change as the trial proceeds. A rule of evidence may supply an inference in behalf of the party upon whom the burden of proof rests; but, if that inference is rebutted, it disappears entirely from the case and the law governing the burden of proof remains constant.

■ In the instant case, the disputable presumption came into play upon proof of the fact that the margin of profit was less during the tax period; it compelled the inference that the burden of the tax was borne by the taxpayer; but this inference was wholly rebuttable by the production of direct or circumstantial evidence showing that in every instance possible it was the intention and settled practice of the processor to pass on the tax to the purchaser. The presumption only came into play once, and its operation ended upon the introduction of evidence that the burden of the tax had been passed on in every possible instance. If then the taxpayer should prove that in some instances the tax had not been passed on, that evidence would not revive the presumption, though it would pro tanto meet the burden of proof resting upon the plaintiff.

The presumption would not be revived because its creation is dependent upon proof

that the margin of profit was less during the tax period, not upon proof that there were instances wherein the tax was not shifted. Respondent's argument would have the presumption standing as a witness for the taxpayer in every instance where the margin during the tax period was lower and the plaintiff failed otherwise to meet the burden of proof imposed by the substantive law. In the Turnipseed case, supra, it was expressly held that disputable presumptions had no such effect, that they only created a temporary inference, and that, upon the introduction of evidence to the contrary, the presumption was "at an an end".

In Western & A. R. R. Co. v. Henderson, supra, the court held that it was wholly arbitrary and unreasonable to leave the presumption in the case and give it the effect of evidence after testimony rebutting it had been introduced. The constitutionality of the prima facie statute in the Turnipseed case was upheld because it created merely a temporary inference of fact that vanished upon the introduction of opposing evidence. In the Henderson case, the statute was held invalid because the inference was given the effect of evidence to be weighed against opposing testimony and was to prevail unless such testimony was found to preponderate. In other words, it shifted the burden of proof and therefore was held to be arbitrary, unreasonable, and violative of the Fourteenth Amendment.

The question before us is one of the nature and effect of the presumption created by the federal prima-facie statute. Does it merely create a temporary inference of fact that vanishes upon the introduction of opposing evidence, or does it create an inference that is given the effect of evidence? We should not ascribe to the lawmakers an intention to create an inference that changes the substantive law, shifts the burden of proof, stands throughout the trial as a witness for the taxpayer, supplies without proof facts peculiarly within the knowledge of the taxpayer, and is of a nature similar to the presumption in the Henderson case that was denounced by the Supreme Court as arbitrary, unreasonable, and violative of the due-process clause.[2]

---

1 Central Vermont R. v. White, 238 U. S. 507, 35 S.Ct. 865, 59 L.Ed. 1433, Ann. Cas.1916B, 252; New Orleans & N. E. R. Co. v. Harris, 247 U.S. 367, 38 S.Ct. 535, 62 L.Ed. 1167.

2 Western & A. R. R. Co. v. Henderson,

Cf. Commercial Molasses Corporation v. New York Tank Barge Corporation, 314 U.S. 104, at page 111, 62 S.Ct. 156, at page 161, 86 L.Ed. 89, wherein Mr. Chief Justice Stone said, "Whether we label this permissible inference with the equivo-

We think the presumption created by the federal statute is of the nature of that dealt with in Mobile J. & K. C. R. Co. v. Turnipseed, supra. Therefore, the petition for rehearing is denied.

HUTCHESON, Circuit Judge, dissents.

cal term 'presumption' or consider merely that it is a rational inference from the facts proven, it does no more than require the bailee, if he would avoid the inference, to go forward with evidence sufficient to persuade that the non-existence of the fact, which would otherwise be inferred, is as probable as its existence. It does not cause the burden of proof to shift, and if the bailee does go forward with evidence enough to raise doubts as to the validity of the inference, which the trier of fact is unable to resolve, the bailor does not sustain the burden of persuasion which upon the whole evidence remains upon him, where it rested at the start. Southern R. Co. v. Prescott, [240 U.S. 632, 36 S. 279 U.S. 639, 49 S.Ct. 445, 73 L.Ed. 884. v. Parkersburg & M. Sand Co., [4 Cir., 266 F. 283, 11 A.L.R. 686], supra; Tomkins Cove Stone Co. v. Bleakley Transp. Co., 3 Cir., 40 F.2d 249; Pickup v. Thames Insurance Co., 3 Q.B.D. 594. Cf. Del Vecchio v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229; Wigmore, op. cit., supra, §§ 2485, 2490, 2491, and cases cited."

Cf. also Connecticut Mut. Life Ins. Co. v. Lanahan, 6 Cir., 112 F.2d 375, at page 376, wherein the court said: "It is conceded that the general rule in respect to the presumption against suicide, is applicable in Michigan, and that the presumption is not to be treated as evidence and disappears when testimony is offered to rebut it. Stuckum v. Metropolitan Life Ins. Co., 283 Mich. 297, 277 N.W. 891; Shiovitz v. New York Life Ins. Co., supra [281 Mich. 382, 275 N.W. 181]; Abbott v. Metropolitan Life Ins. Co., 282 Mich. 433, 439, 276 N.W. 506. Compare New York Life Ins. Co. v. Ross, 6 Cir., 30 F. 2d 80; Harrison v. New York Life Ins. Co., 6 Cir., 78 F.2d 421."